Luna v SOT







NUMBER 13-01-00091-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

______________________________________________________________


LARRY GARCIA LUNA, A/K/A LARRY LUNA, A/K/A LORENZO LUNA, Appellant,


v.


THE STATE OF TEXAS, Appellee.

______________________________________________________________


On appeal from the 28th District Court of Nueces County, Texas.

______________________________________________________________


O P I N I O N


Before Chief Justice Valdez and Justices Hinojosa and Rodriguez

Opinion by Justice Hinojosa


A jury found appellant, Larry Garcia Luna, a/k/a Larry Luna, a/k/a Lorenzo Luna, guilty of nine counts of aggravated sexual
assault of a child (1) and one count of reckless injury to a child, (2) and assessed his punishment at eighteen years
imprisonment for each count of aggravated sexual assault, and two years imprisonment for the injury to a child. In three
issues, appellant contends that: (1) a jury deliberating on punishment has the right to reconsider its determination of guilt
after hearing additional evidence during the punishment phase of the trial; (2) a defendant's state and federal constitutional
rights and state statutory rights are violated when the trial judge implicitly instructs the jury that it may not reconsider its
determination of guilt and refuses to grant a mistrial; and (3) the trial court erred in failing to grant him a new trial "because
the court misdirected the jury about the law concerning the jury's right to reconsider its determination of guilt after hearing
additional evidence at the punishment phase." We affirm.

A. Background


Appellant was charged with committing nine separate sexual offenses against the daughter ("the child") of his live-in
girlfriend, Laura DeLeon. The child was approximately seven to nine years of age when the offenses occurred. Appellant
gave a detailed statement to the police in which he admitted committing various sexual offenses against the child, including
anal intercourse. He also admitted hitting her. At trial, appellant's confession was admitted into evidence. The child
testified about the assaults, and DeLeon testified about the child's outcry statement. A sexual assault nurse examiner from
Driscoll Children's Hospital testified that the child's physical examination revealed tears in her anus and bruises on her
buttocks. Appellant took the stand and denied assaulting the child. The jury deliberated less than three hours before
convicting appellant on all ten counts.

During the punishment phase, DeLeon was asked about the after-effects of the sexual assaults upon the child. She testified
that the child had many problems, including "compulsive lying," fantasizing, nightmares, difficulty in school and toileting
accidents. Richard Ward, the child's counselor, testified that the child's problems included self-hatred, self-mutilation,
difficulties with school and socialization, nightmares, toileting accidents, fears, and fantasizing. He said that these
symptoms "normally accompany severe stress and trauma." As an example, he testified that one of the child's fantasies was
that "she saw a demon in her room who told her that he had made her stepfather do these things to her." The child believes
the demon to be real. According to Ward, that fantasy is a type of withdrawal from reality.

During the jury's deliberation on punishment, several notes were sent out. Note One, filed at 3:18 p.m., stated, "May we
obtain copies of today's testimony by Laura DeLeon & Mr. Ward?" The trial judge summoned the attorneys and told them
she was going to inform the jury that the only way they could obtain a transcript of the testimony was to certify to the court
that they were in disagreement about the testimony of the witnesses. Neither attorney objected to the judge's response to
Note One.

Note Two, filed at 3:30 p.m., stated, "Given todays [sic] testimony of these 2 people, doubts have been created in the minds
of some jurors that may effect [sic] their priore [sic] decision; are jurors allowed to change their decision after hearing the
testimony that has created doubts in their minds?"

Note Three, filed at 3:43 p.m., stated that the jury was in disagreement about Laura DeLeon's testimony concerning the
child's compulsive lying, and requested a transcript of that testimony. The trial court recalled the parties and jurors to the
courtroom, and the testimony in question was read back to the jury.

After the jurors had returned to the jury room and their deliberations, the trial court asked the attorneys about Note Two. 
The following colloquy occurred:

Defense Counsel: This is our position on this. We think that jury note number 2 is an indication of the jury's expressing
reasonable doubt of the guilt/innocence of my client. The first thing I would do is ask the Court to instruct a verdict in our
favor, a verdict of acquittal in each of the counts because of note number 2. So that's what I'm going to ask you to do right now.

The Court: I think it's important to identify those jurors if, in fact, they have reasonable doubt as to guilt. And I think it's
important for the record to know that, whether they have some doubt and which ones are they, if we're going to go that way. 
But at first I think we need to do one step at a time. Let me give them a few more minutes.

Defense Counsel: That is fine, Judge.

Prosecutor: Judge, just in response to Mr. Gilmore's requesting for instructed verdict, I think that would be totally
inappropriate because they definitely didn't say every single one of us had doubts.

Defense Counsel: Well, all it takes is one to have a doubt.

Prosecutor: For a hung jury.

Defense Counsel: For a hung jury, right.

Prosecutor: But not for an instructed verdict.

Defense Counsel: . . . we are first moving for that, we're going to ask for that. The second thing is if the Court denies that
then we're going to ask for a mistrial.

The Court: Okay. Bring your case law and we will give the jury some time.

(Brief recess)


The Court: . . . [the] response to question 2 would be, "You must determine this case upon the evidence which you have
heard and the exhibits which have been admitted into evidence during the punishment phase of this trial." Any objection
by the State?

Prosecutor: None, Your Honor.

The Court: By the Defense?

Defense Counsel: I have no objection, Judge. I will say for the record that I'm not sure that that answers the jury's question.
But I don't know of any other way at this point.

Prosecutor: And Judge, I was going to suggest maybe, "Continue your deliberation on the punishment phase."

Defense Counsel: Oh, I'm not going to suggest that. No.

The Court: Let's not push it.

At approximately 7:00 p.m., the jury returned the punishment verdict. The jurors were polled, and each stated that the
verdict was his individual verdict.

Appellant filed a timely pro se notice of appeal and a timely pro se motion for new trial. Attached to the motion was the
affidavit of juror Angie Menjares, which states, in part, as follows:

There were two testimonies that came to light after we had reached the verdict of guilty. If I had personally heard this
before we reached the verdict, my decision would have been not guilty, because of insufficient evidence.

The trial court denied appellant's motion for new trial.

B. Trial Court's Refusal to Enter Verdict of Acquittal

and Refusal to Grant Mistrial 


In his first issue, appellant asserts that a jury deliberating on punishment has the right to reconsider its determination of
guilt in light of additional evidence admitted during the punishment phase of the trial. In his second issue, appellant
contends that a defendant's state and federal constitutional rights and state statutory rights are violated when, after a jury
deliberating on punishment asks the trial judge if it may reconsider its determination of guilt, the judge implicitly answers
"no" by instructing the jury to continue deliberating on punishment, and refuses to grant a mistrial.

In these two issues, appellant argues that the trial court's refusal to enter a verdict of acquittal and refusal to grant a mistrial
violated appellant's rights under article 37.07(c) of the code of criminal procedure and his rights under the Texas and
federal constitutions. The State asserts appellant waived these issues by failing to properly preserve them in the trial court.

1. Preservation of Error

The record reflects that appellant properly requested a directed verdict of acquittal, arguing that the jury had indicated it had
a reasonable doubt about the correctness of its verdict of guilty. The trial court did not explicitly deny the request, but did
so implicitly in its response to Note Two. To preserve error, the record must show that the issue was sufficiently presented
to the trial court, and that the trial court expressly or implicitly ruled on the issue, or refused to rule on the issue. Tex. R.
App. P. 33.1(a). We hold that appellant has preserved this issue for our review.

The record reflects, however, that appellant never formally moved for a mistrial. He told the trial court " . . . if the Court
denies [the request for an acquittal], then we're going to ask for a mistrial." However, although the trial court implicitly
denied the motion for acquittal, appellant never asked for a mistrial. In fact, appellant acquiesced to the continuation of
jury deliberation. Furthermore, appellant's attorney urged his objection only on the ground that the jurors had "express[ed]
reasonable doubt of the guilt/innocence of my client." He made no objection based on article 37.07, section 3(c), the Texas
constitution, or the federal constitution. Without proper preservation, even constitutional error may be waived. Tex. R.
App. P. 33.1(a); Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000); Dewberry v. State, 4 S.W.3d 735, 752 & n.
16 (Tex. Crim. App. 1999). (3) Accordingly, we hold appellant has failed to preserve these issues for our review, and they
are waived.

Thus, the only issue preserved by appellant was the denial of his motion for acquittal, on the basis that the jury expressed
reasonable doubt in Note Two (i.e., that Note Two acted as an informal verdict of not guilty). 

2. Classification of Note


Appellant contends that Note Two was an informal verdict of acquittal. However, case law does not support his
contention.

If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the
direction of the court, be reduced to the proper form. Tex. Code Crim. Proc. Ann. art. 37.10(a) (Vernon Supp. 2002). 
Generally, a jury's verdict should be held good if the jury's intention can reasonably be ascertained. Brinson v. State, 570
S.W.2d 937, 939 (Tex. Crim. App. 1978); White v. State, 866 S.W.2d 78, 86 (Tex. App.-Beaumont 1993, no pet.). A
verdict should receive a liberal rather than a strict construction and, when a finding of the jury can be reasonably
ascertained, the verdict is sufficient. Smart v. State, 144 Tex. Crim. 93, 161 S.W.2d 97, 99 (1942); White, 866 S.W.2d at
86. It is the duty of the trial court to reject unresponsive, incomplete, or insufficient verdicts, call the problem to the
attention of the jury, and then have the problem corrected with the jury's consent or have the jury sent out again to
reconsider their verdict. Reese v. State, 773 S.W.2d 314, 317 (Tex. Crim. App. 1989).

In Antwine v. State, the court of criminal appeals held that a jury note must be plainly intended as an acquittal before it can
be considered an informal verdict. Antwine v. State, 572 S.W.2d 541, 543 (Tex. Crim. App. [Panel Op.] 1978). In that
case, the jury sent out a note saying they were "hopelessly deadlocked in their 'efforts to reach a verdict.'" Id. The court
held this was not an informal verdict because it was not plainly intended as an acquittal. Id.

In State ex rel. Hawthorn v. Giblin, jury notes indicated that the jury had voted 12-0 "not guilty" on an attempted murder
charge, but were deadlocked 6-6 on an aggravated assault charge. State ex rel. Hawthorn v. Giblin, 589 S.W.2d 431,
432-33 (Tex. Crim. App. [Panel Op.] 1979). The trial court declared a mistrial and entered a judgment of acquittal on the
attempted murder charge. Id. The State sought a writ of prohibition, and the court of criminal appeals held that the jury
notes were written in answer to questions from the trial court as to the status of the jury's deliberations. This fact, and the
jury's obvious deadlock on the aggravated assault charge, leads us to the conclusion that these communications were
intended merely as reports on the jury's progress toward a verdict. Certainly, we cannot conclude that these
communications were plainly intended to operate as an acquittal. We hold that no verdict was rendered . . . and that as a
consequence no lawful judgment may be entered therein.

Id. (citing Antwine, 572 S.W.2d at 541).

After reviewing the record, we conclude that the jury note was not plainly intended as an acquittal. Thus, it cannot be
viewed as an informal verdict. Appellant's first and second issues are overruled.

C. Trial Court's Failure to Grant a New Trial


In his third issue, appellant contends the trial court erred in failing to grant him a new trial, "because the court misdirected
the jury about the law concerning the jury's right to reconsider its determination of guilt after hearing additional evidence at
the punishment phase" of the trial. In his motion for new trial, appellant argued that "if not for the court's instructions to
the jury to continue deliberating on the punishment, the jury should have been entitled, as a matter of right, to change their
verdict after re-examining or reviewing the testimony."

A defendant must be granted a new trial when the trial court has misdirected the jury about the law or has committed some
other material error likely to injure the defendant's rights. Tex. R. App. P. 21.3(b). The grant or denial of a motion for new
trial is entrusted to the discretion of the trial court. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995);State v.
Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). The only question on appeal is whether the trial court's decision
was arbitrary or unreasonable. Gonzalez, 855 S.W.2d at 695 n. 4.

The issue here is whether the trial court abused its discretion in denying appellant's motion for new trial which asserted that
the court had "misdirected" the jury in response to Note Two, by instructing them to "determine this case upon the evidence
which you have heard and the exhibits which have been admitted into evidence during the punishment phase of this trial." 
In other words, did the jury have the right to reconsider its guilty verdict after hearing evidence during the punishment
phase that suggested the child had problems distinguishing reality from fantasy?

1. Federal Constitutional Rights


As in his first two issues, appellant argues that the trial court's actions violated several of his federal constitutional rights,
and that its denial of his motion for new trial was, therefore, erroneous. As we noted above, to preserve error, the record
must show that the issue was sufficiently presented to the trial court, and that the trial court expressly or implicitly ruled on
the issue, or refused to rule on the issue; even constitutional error may be waived. Tex. R. App. P. 33.1(a); Wright, 28
S.W.3d at 536; Dewberry, 4 S.W.3d at 752 & n.16.

The record reflects that appellant never presented this issue to the trial court in his motion for new trial. We hold appellant
failed to preserve this issue for our review, and it is waived.

2. Statutory Rights


A verdict is a written declaration by a jury of its decision of the issue submitted to it in the case. Tex. Code Crim. Proc.
Ann. art. 37.01 (Vernon 1981). In Texas, innocence or guilt is determined first; if necessary, punishment is determined in a
separate hearing. Id. at art. 37.07, § 2 (Vernon Supp. 2002). The right to jury sentencing is purely statutory; there is no
Texas constitutional right to jury sentencing. Washington v. State, 677 S.W.2d 524, 527 (Tex. Crim. App. 1984), overruled
on other grounds by Bell v. State, 994 S.W.2d 173 (Tex. Crim. App. 1999); Tinney v. State, 578 S.W.2d 137, 138 (Tex.
Crim. App. 1979);Ex parte Giles, 502 S.W.2d 774, 782 (Tex. Crim. App. 1973). Punishment shall be assessed by the same
jury that determined the defendant's guilt. Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (Vernon Supp. 2002). Where
punishment is decided by the jury, "the verdict shall not be complete until the jury has rendered a verdict on both the guilt
or the innocence of the defendant and the amount of punishment, where the jury finds the defendant guilty." Id. at § 3(c)
(Vernon Supp. 2002).

Appellant argues that, under article 37.07, a verdict is not "complete" until punishment has been assessed, and that up until
the time punishment is assessed, a jury may reconsider its decision as to guilt. We disagree.

First, there is no statutory provision specifically allowing a jury to reconsider its decision on guilt after hearing evidence
during the punishment phase of a criminal trial. Therefore, we must construe the existing statutes to determine the answer. 
In interpreting statutes, we seek always to effectuate the collective legislative intent or purpose. Sanchez v. State, 23
S.W.3d 30, 34 (Tex. Crim. App. 1996). Appellate courts must give effect to the whole statute, not interpreting any phrase
in isolation, but looking at the phrase in situ, or in context of the entire statute in question. Nguyen v. State, 1 S.W.3d 694,
696 (Tex. Crim. App. 1999); Naranjo v. State, 890 S.W.2d 467, 470 (Tex. App.-Corpus Christi 1994, pet. ref'd). If the
meaning of the statute should have been plain to the legislators who voted on it, we ordinarily give effect to that plain
meaning. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). However, where application of a statute's plain
language would lead to absurd consequences that the Legislature could not possibly have intended, we should not apply the
language literally. Id. When we interpret ambiguous statutes, we may consider extratextual factors. Sanchez, 23 S.W.3d at
34 (examining as "extratextual factors" (1) the evident purpose of article 37.07, § 3(c), "to increase the reliability of jury
verdicts," and (2) the fact that if the Legislature had intended to exempt the jury's decision on the sudden passion issue from
the statutory unanimity requirement, it would have expressly done so).

In Texas, criminal trials are bifurcated into a guilt/innocence phase and a punishment phase. See generally Tex. Code
Crim. Proc. Ann. art. 37.07 (Vernon 1981 and Supp. 2002). Article 37.07 authorizes the trial court to "first submit to the
jury the issue of guilt or innocence of the defendant of the offense or offenses charged, without authorizing the jury to pass
upon the punishment to be imposed." Id. at § 2(a). If a finding of guilty is returned, a separate hearing is held at which
evidence relevant to punishment may be introduced by the State and by the defendant. See id. at § 3(a). Punishment is then
assessed by the trial court or, if the defendant has so elected, by the jury. Id. at § 2(b).

The Legislature clearly intended "determination of guilt" and "assessment of punishment" to be two separate proceedings. 
It made no provision for a reconsideration of the decision on guilt, after the punishment phase has begun. Adopting
appellant's interpretation of article 37.07, section 3(c) would negate the system of bifurcation clearly intended by the
Legislature, and would in effect transform the determination of guilt and punishment into a single proceeding.

Second, article 37.07, section 3(c) states:

In cases where the matter of punishment is referred to the jury, the verdict shall not be complete until the jury has rendered
a verdict both on the guilt or innocence of the defendant and the amount of punishment, where the jury finds the defendant
guilty. In the event the jury shall fail to agree, a mistrial shall be declared, the jury shall be discharged, and no jeopardy
shall attach.

Id. at § 3(c) (emphasis added). The purpose of section 3(c) is to assure that, in cases where the jury cannot agree on
punishment, double jeopardy will not bar the defendant's retrial.

Third, had the jury really felt appellant was not guilty, it could have refused to return a punishment, or failed to agree on
punishment. Instead, the jury unanimously returned a verdict, and all twelve jurors represented to the trial court, under
oath, that the verdict was his or her individual verdict.

For the above reasons, we reject appellant's interpretation of article 37.07, section 3(c) as giving the jury an absolute right
to reconsider its verdict on guilt, after hearing evidence relevant to punishment. We hold the trial court did not abuse its
discretion in denying appellant's motion for new trial on this ground. Appellant's third issue is overruled.

The judgment of the trial court is affirmed. 



FEDERICO G. HINOJOSA

Justice



Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

21st day of February, 2002.

1. Tex. Pen. Code Ann. § 22.021(a)(1) (Vernon Supp. 2002). Aggravated sexual assault of a child is a first degree felony,
punishable by imprisonment for life or for any term of not less than five years or more than ninety-nine years. Id. at §
12.32(a) (Vernon 1994). 

2. Tex. Pen. Code Ann. § 22.04 (Vernon Supp. 2002). Reckless injury to a child is a second degree felony, punishable by
imprisonment for any term of not less than two years or more than twenty years. Id. at § 12.33 (Vernon 1994).

3. We note that appellant does not argue on appeal that any error present is fundamental or structural error, which may be
raised for the first time on appeal. See Blue v. State, 41 S.W.3d 129, 137 (Tex. Crim. App. 2000) (J. Keasler conc.); Marin
v. State, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993), overruled on other grounds by Cain v. State, 947 S.W.2d 262,
264 (Tex. Crim. App. 1997).