Sean Curtis WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–127 CR.

Court of Appeals of Texas,
Beaumont.

Nov. 24, 1993.

James Makin, Beaumont, for appellant.

Tom Maness, Dist. Atty., Rodney D. Conerly, Asst. Crim. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This appeal originates from a conviction for the felony offense of Attempted Capital Murder. The record reflects that following selection of the jury, appellant pleaded guilty and elected for that body to assess his punishment. The trial court's judgment reflects that the jury assessed punishment at sixty (60) years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings to us the following four points of error:

Point of Error One: The trial court improperly allowed unadjudicated extraneous offenses into evidence.

Point of Error Two: The trial court improperly allowed the prosecutor to make an improper jury argument.

Point of Error Three: The trial court improperly refused to include a mitigating instruction based on intoxication.

Point of Error Four: The trial court improperly received inconsistent jury forms.

The record reflects that the offense occurred when appellant fired several shots from a handgun at Beaumont Police Officer Paul Barnett. Officer Barnett was patrolling a neighborhood in hopes of locating a suspect in a burglary of a habitation which had oc-

curred only minutes before. A handgun and ammunition were the only items taken from the burglarized residence. While patrolling, Officer Barnett noticed appellant walking on the sidewalk, and further observed a large cut on appellant's arm. Noting that appellant's appearance matched the physical and clothing description of the suspect, Officer Barnett stopped to speak with appellant. The officer noticed appellant was very nervous and was sweating profusely. For safety purposes, Officer Barnett attempted a pat-down of appellant's clothing. At this point, appellant twisted away and pulled a handgun from his pants. Appellant fired several shots at Officer Barnett. The officer returned fire, with one of the shots apparently striking appellant as he fled the scene on foot. Police later located appellant, placed him under arrest, and transported him to the hospital for treatment of the gunshot wound. Appellant's first point of error complains of testimony, from several witnesses, regarding appellant's involvement in the initial burglary. As the State's first witness was about to describe the events she observed relating to the burglary, the following exchange took place:

Q. (the State) What did you notice when you were looking out the window?

A. (witness) I noticed a man walking across the neighbor's—

MR. MAKIN: (for appellant) Your Honor, I object at this time to this line of questioning or evidence as being inadmissible under Rule 404, showing evidence of an extraneous offense.

THE COURT: Overruled, sir.

MR. MAKIN: I would ask that the court articulate into the record the purpose for which this evidence would be admissible.

THE COURT: Would you state it, Mr. Rodriguez, please.

MR. RODRIGUEZ: (the State) State would offer this evidence in terms of establishing motive of the defendant for commission of the offense alleged, Your Honor.

THE COURT: It is admitted for that basis only.

MR. MAKIN: I would ask for a limited (sic) instruction at this time.

THE COURT: Jury will consider this testimony only for that purpose.

MR. MAKIN: I would object now to the unfair nature of the evidence under Rule 403 and ask the court to conduct a balancing of the probativeness of (sic) the prejudice of allowing the evidence of extraneous offense in.

THE COURT: Your request is denied, sir.

■ The record further reflects that appellant requested and obtained a timely running objection to all testimony referring to the initial burglary. This preserved the point for appellate review. *Ethington v. State*, 819 S.W.2d 854 (Tex.Crim.App.1991); TEX.R.APP.P. 52(a); TEX.R.CRIM.EVID. 103(a)(1). Furthermore, appellant's counsel did a laudable job in engaging in the proper sequence of objections mandated under *Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim.App.1991) (opinion on rehearing), for preserving issues involving extraneous offenses which arise during the guilt/innocence phase of the trial. *See also, McBride v. State*, 862 S.W.2d 600, 608 (Tex.Crim.App. 1993); *Nelson v. State*, 864 S.W.2d 496 (Tex. Crim.App.1993).

■ An examination of this appeal makes it really apparent that a plea of guilty to a felony offense before a jury is a unitary trial, not a bifurcated one, and such a plea admits the existence of all incriminating facts necessary to establish guilt. *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex.Crim.App.1987). As such, while the introduction of evidence by the State in cases where the defendant pleads guilty before a jury is entirely proper, the sole issue before the jury in such instances is that of punishment. *Id.* Since the instant case involved a punishment phase proceeding, TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 3(a) (Vernon Supp.1993), controlled the admissibility of evidence.

We note that neither party included in their briefs a citation to or discussion of the definitive case on this issue, *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim.App.1992), which opinion was handed down several months prior to the date appellant filed his

brief. Appellant did, to his credit, reference the *Grunsfeld* decision out of the Dallas Court of Appeals in support of point of error one.[1] Candidly, we must admit that our court took a different approach in interpreting Article 37.07, sec. 3(a), than both the Dallas Court in *Grunsfeld*, and the Court of Criminal Appeals in their affirmance of the Dallas Court's analysis and result. *See, Huggins v. State*, 795 S.W.2d 909 (Tex. App.—Beaumont 1990, pet. ref'd). The record reflects that the trial of the instant case took place some five months prior to the Court of Criminal Appeals' decision in *Grunsfeld*, so any reliance by the trial court on our pronouncements in *Huggins* was justified at that time. Said pronouncements, however, were abrogated with the Court of Criminal Appeals' decision in *Grunsfeld*.

In *Grunsfeld*, the Court of Criminal Appeals adopted the Dallas Court's interpretation of "any matter the court deems relevant to sentencing," as provided in Article 37.07, sec. 3(a), as follows:

In light of the legislative history and the timing of the amendment, and in an effort to ascribe meaning to each word contained in the subject provision, as amended, we agree with the Dallas Court of Appeals in *Grunsfeld* in construing article 37.07(3)(a) [sic], to provide that even if deemed relevant to sentencing by the trial court, evidence is not admissible at punishment, *unless* (1) it is permitted by the Rules of Evidence [footnote omitted], and (2) if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies article 37.07(3)(a)'s [sic] definition of prior criminal record.

*Grunsfeld*, 843 S.W.2d at 523. Article 37.07, sec. 3(a), defines "prior criminal record" as "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." Under this definition, it is clear that any testimony concerning the alleged burglary was not admissible during the punishment hearing in the instant case.

In its brief, the State argues that because appellant took the stand and testified that he was a burglar and that he had broken in the house so that he could get something to buy more "dope," any error in admitting evidence concerning the alleged burglary was cured by appellant's similar testimony. The general rule is that error regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection. *See, Ethington*, 819 S.W.2d at 858–860. However, error is not waived when the evidence is brought in later in an effort to meet, rebut destroy, deny or explain the improperly admitted evidence. *Rogers v. State*, 853 S.W.2d 29, 35 (Tex.Crim.App. 1993). In the instant case, appellant took the witness stand and on direct examination admitted, *inter alia*, that he was a burglar. On cross-examination, the State questioned appellant about the details of the burglary already in evidence in the State's case-in-chief. We find that appellant, by admitting up-front to being a burglar in general and thus opening himself up to the State to question him concerning the already objected to burglary, was engaging in a trial strategy in order to meet the State's evidence concerning the extraneous offense. We will not fault appellant's defense counsel for attempting to mitigate any damage caused by the improperly admitted burglary evidence.

The State additionally argues that the burglary evidence was admissible in that the burglary and the shooting "took place within minutes of each other and were all one criminal transaction." We again rely on *Rogers* to provide a solution. The *Rogers* Court applied the two-part *Mayes*[2] test to the admissibility of "background" evidence, formerly known as "res gestae" evidence. The first part of the test determines whether the background evidence is relevant under TEX. R.CRIM.EVID. 401. *Rogers*, 853 S.W.2d at 32. If the test for relevancy is satisfied, the second part of the test must decide whether the relevant evidence should be admitted as

---

1. *See, Grunsfeld v. State*, 813 S.W.2d 158 (Tex. App.—Dallas 1991).

2. *Mayes v. State*, 816 S.W.2d 79, 84–87 (Tex. Crim.App.1991).

an exception under TEX.R.CRIM.EVID. 404(b).[3] *Id.*

Rule of Criminal Evidence 401 provides that:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

At the outset we are presented with somewhat of a dilemma in that the jury was not faced with having to make a factual determination of anything. There were no special issues as in Capital Murder cases, a "deadly weapon" issue was not submitted for their determination, and although enhancement paragraphs were present in the indictment, the jury was not instructed to make any findings with regard to appellant's two alleged prior felony convictions. Indeed, in punishment proceedings such as those of the instant case, a formal "burden of proof" does not actually exist as the accused is no longer presumed innocent and there is no longer a reasonable doubt as to the accused's guilt. *See, Brown v. State,* 617 S.W.2d 234, 237 (Tex.Crim.App.1981). As such, we cannot say that evidence of the burglary had any tendency to make the existence of any fact that was *of consequence to the determination of the action* more or less probable than without said evidence. In other words, the fact that appellant may have burglarized the house was of no help in arriving at a punishment for intentionally or knowingly attempting to cause Officer Barnett's death by shooting in Officer Barnett's direction with a gun.

■ Even if considered relevant under Rule 401, the State's burglary evidence fails the second part of the *Mayes* test in that said evidence falls into the category of "background contextual evidence." Usually of-

fered by the State only for the reason that it is "background" evidence and therefore helpful to the jury, "background contextual evidence" was held not admissible as one of the "other purposes" for which evidence may be admitted under Rule 404(b). *Rogers,* 853 S.W.2d at 33, n. 5. The type of evidence which the *Mayes* Court held to be admissible was termed "same transaction contextual evidence," and was characterized as "acts, words and conduct *at the time of the commission of the offense*" (emphasis added). *Mayes,* 816 S.W.2d at 86–87, n. 4. The *Mayes* Court concluded that "same transaction contextual evidence" is admissible because said evidence involves several crimes that are "intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." *Id.* In the instant case, we have no such intermixing or blending of the two offenses. Officer Barnett testified that he arrived at the burglary scene, spoke to witnesses, examined the interior of the residence, and then left the scene to patrol the area for a possible suspect. He encountered appellant *three blocks* from the burglarized house as appellant walked up the street. Following several questions to appellant, Officer Barnett attempted a pat-down of appellant's clothing for safety purposes. At that point, appellant pulled the handgun and the shooting started. It is difficult to consider the two offenses, in light of the language in *Mayes,* as "intermixed" or "blended" with one another. We find therefore that under *Grunsfeld, Rogers,* and *Mayes,* the trial court erred in admitting evidence of the burglary.

■ We must now conduct an analysis under the auspices of TEX.R.APP.P. 81(b)(2), which provides:

---

**3.** Rule 404(b) provides as follows:
**Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable

notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.
Rule 404(b), referred to in *Mayes* as the "propensity rule," codifies the common law principle that a defendant should be tried only for the offense for which he is charged and not for being a criminal generally. *Rogers,* 853 S.W.2d at 32, n. 3.

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

The Court of Criminal Appeals has provided us with highly detailed guidelines in applying Rule 81(b)(2) to situations in which trial error is found. In *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989), a sophisticated evidentiary review was developed, and the following warning to reviewing courts provided:

This approach obviously implicates a review of the evidence, but the concern is solely to trace the impact of the error. The untainted evidence is not to be weighted in its own right, nor is it to be examined to see if it is cumulative with the tainted evidence; it is to be considered only to uncover the potentially damaging ramification of the error. In other words, the impact of the error cannot be properly evaluated without examining its interaction with the other evidence.

It is important to note that in the context of a harmless error analysis the other evidence is the entire record. Unlike the dictates of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in resolving the issue of the harmfulness of an error an appellate court is obligated to examine the entire record in a neutral, impartial and even-handed manner and not "in the light most favorable to the prosecution." [citations omitted] A review of the evidence in this manner is necessary because, for example, *an error can be harmful when it has the effect of disparaging a defense*, whereas if there is no defense the error could have been harmless. [emphasis added]

*Id.* at 585–586.

The first two *Harris* factors to consider are (1) the source and nature of the error, and (2) to what degree the error was emphasized by the State. We must reiterate at this point that, at the time this trial took place, the law as announced in *Huggins* permitted *any* evidence to be introduced at the punishment phase of a trial that, in the opinion of the trial court, was relevant to sentencing. Thus, no intent to taint the jury can be attributed to the State because the wide-open rule announced in *Huggins* virtually begged to be used with impunity.

The record reflects that proper *Grunsfeld* punishment evidence in the form of a penitentiary packet, State's Exhibit 16, was introduced by the State without objection from appellant. The penitentiary packet contained two prior burglary convictions out of Tom Green County, Texas. While the source and nature of the error was the State's offer of an extraneous unadjudicated offense, the impact of said evidence upon the jury is perceived as slight because, (1) appellant's two prior burglary convictions were properly introduced into evidence before the jury, (2) the appellant admitted that he was a cocaine addict (as well as a burglar), and (3) the ultimately more severe instant offense, for which appellant pleaded guilty, was described in great detail by several witnesses including, (a) the intended victim, (b) Officer John Kerr, who described Officer Barnett's frantic radio message for help, and (c) Officer Barnett's wife, who was pregnant at the time of the shooting, and testified as to her anxious and highly emotional mental state upon learning of the shooting. All told, the above factors weigh particularly against a finding that the error contributed to the sixty year sentence appellant received from the jury.

The third *Harris* standard in a rule 81(b)(2) analysis considers the probable collateral implications of the error. *Harris* specifically mentions the tendency for the error to disparage a sole defense of appellant as being a significant factor. In the instant case, the appellant attempted to mitigate punishment by proving that he was highly intoxicated from alcohol and cocaine ingestion and thus was not completely responsible for his actions in shooting at the officer.

Admittedly, the fact that the State was permitted to introduce evidence of the apparently rational and calculated act of burglarizing a residence by appellant in order to steal a handgun and ammunition for later resale casts significant doubt on appellant's claim of being "pretty messed up" on cocaine and alcohol. However, the State elicited from

appellant, without objection, the fact that he burglarized another, separate residence and sustained the large cut on his arm in the process. Indeed, State's Exhibits 14 and 17, also admitted into evidence without objection, show appellant sprawled and bleeding on the ground with several items of jewelry on the ground next to appellant apparently having been pulled out of appellant's pocket by a police officer during a search incident to the arrest. While admitting to having broken into the second residence, appellant insisted that he took nothing and was adamant that he knew nothing about the jewelry clearly visible in both photographs. Thus, the unobjected to evidence of the second extraneous burglary certainly had the potential to rehabilitate appellant's intoxication theory of mitigation. This could be reasonably deduced from the fact that, although exposed to a possible prison term of life, the jury only sentenced appellant to sixty years; and this in addition to knowing that appellant had been handed two felony convictions just two years prior to committing the instant offense. The limited disparagement of appellant's mitigating theory of intoxication as well as the less than maximum sentence imposed upon appellant appears to render any probable collateral implications of the error of little or no consequence to appellant.

The *Harris* Court's fourth consideration requires us to examine the probable weight placed on the error by the jury. As alluded to previously, we feel the combined evidence from both the State and appellant narrowed the jury's focus to appellant's actions as an uncontrollable, drug-crazed shooter of the unsuspecting police officer, with the officer seen as just doing his job in protecting the community. Furthermore, the fact that the jury was aware of appellant's two prior burglary convictions undoubtedly minimized, or at least neutralized any prejudice on the jury's part which may have arisen upon hearing evidence of the initial burglary. With the major emphasis of the State's case on the truly senseless nature of the shooting as well as the portrayal of the victim, through his own words and the words of his young wife and of a fellow officer, as being only seconds away from death, we believe it highly probable that the evidence of the non-violent, non-

destructive entry into a residence by appellant was relegated to the collective mental "back burner" of the jury.

Finally, *Harris* requires that we determine whether a finding of harmlessness beyond a reasonable doubt would cause the State to deliberately repeat the error with impunity in future cases. Again, we must emphasize that the instant situation involves the issue of evidentiary admissibility at the *punishment phase* of the trial. At this point in time the Court of Criminal Appeals has very clearly and concisely set out admissibility standards at the punishment phase of a trial in its *Grunsfeld* decision. Furthermore, we must admit that the State was on very thin ice in the instant case. The slightest change in the evidence could have resulted in an entirely different result. Had State's Exhibits 14 and 17 not been admitted into evidence, or had been objected to; or had there been no evidence of the second burglary, or had appellant denied being involved in a second burglary, or had that line of questioning been objected to; or had the victim's wife, or Officer Kerr not testified as to their, and the victim's, emotional condition, an entirely different result might be in order. We feel, therefore, that our finding, that the error in admitting the initial burglary evidence did not contribute to appellant's punishment beyond a reasonable doubt, will not present too great a risk that the error will be repeated. *See also, Higginbotham v. State,* 807 S.W.2d 732 (Tex.Crim.App.1991). Point of error one is overruled.

■ Appellant's second point of error references us to the following portion of the State's final argument to the jury:

He was placed on probation on the 26th of May. The first day he was to report to the probation department in San Angelo, Texas was the 30th of May. The first date alleged in the motion to revoke his probation that he did not report was the 30th of May. He didn't even make four days on probation back in 1989 before he just goes no, I don't think I'm going to be reporting.

MR. MAKIN: Your Honor, I would object to the State saying what my client thought.

THE COURT: Overruled.

MR. RODRIGUEZ: You can—

THE COURT: Go ahead.

MR. RODRIGUEZ: I'm sorry, Your Honor.

THE COURT: Go ahead.

MR. RODRIGUEZ: You can draw your own conclusions from the facts.

In his brief, appellant complains of the above argument because, (1) the State improperly injected what the appellant thought, (2) the State's argument was clearly outside the scope of permissible jury argument, and (3) the State committed error by inviting the jury to consider collateral, unadjudicated crimes. It is obvious from the portion of the statement of facts set out above that neither argument (2) nor (3) were complained of to the trial court. With regard to arguments (2) and (3), we find that appellant has presented nothing for review as his objection at trial differs from his complaint on appeal. *Sterling v. State,* 800 S.W.2d 513, 521 (Tex. Crim.App.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2816, 115 L.Ed.2d 988, (1991).

With regard to the complaint that the State's argument "improperly injected what the Defendant thought," with regard to appellant's failure to report to his probation officer only four days after being placed on probation in San Angelo, the record reflects that State's Exhibit 16, the penitentiary packet, was introduced into evidence in its entirety without objection. Contained within State's Exhibit 16 is an order revoking the probation appellant received on May 26, 1989. In said revocation order, the court found that appellant failed to report to his probation officer on the scheduled date of May 30, 1989. The prosecutor's remark that appellant apparently thought to himself, "[N]o, I don't think I'm going to be reporting," is clearly a reasonable deduction from the evidence admitted for consideration by the jury, and therefore, proper jury argument. *Harris v. State,* 784 S.W.2d 5, 12 (Tex.Crim.App.1989), *cert. denied,* 494 U.S.

1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex. Crim.App.1973). Point of error two is overruled.

■ Appellant's third point of error complains of the trial court's refusal to include a mitigating instruction on intoxication in the court's instructions to the jury. The following pertinent portion of the charge conference provides illumination:

THE COURT: I have tendered a proposed charge to both sides yesterday. Is there any objection to the proposed charge from the district attorney?

MR. RODRIGUEZ: No objection from the State.

THE COURT: Mr. Makin, do you have any objections?

MR. MAKIN: Just one, Your Honor.

THE COURT: What would that be?

MR. MAKIN: We would request that an instruction as to intoxication as a mitigating factor be placed in the charge.

THE COURT: The law, I believe, requires that only if intoxication is such that it produces temporary insanity. Is there any evidence that occurred?

MR. MAKIN: *There is no evidence of temporary insanity,* Your Honor. There is evidence of legal intoxication. We would ask that an instruction for mitigating circumstances be placed in the charge. (emphasis added)

THE COURT: That's declined (Sic), sir. I don't believe that's the law.

The trial court was entirely correct in that before a defendant is entitled to a mitigating instruction of intoxication evidence of temporary insanity by reason of intoxication must first be shown. TEX.PENAL CODE ANN. sec. 8.04(b) (Vernon 1974) [4]; *see also, Arnold v. State,* 742 S.W.2d 10 (Tex.Crim.App.1987). Therefore, reading Section 8.04(b) together with TEX.PENAL CODE ANN. sec. 8.01(a) (Vernon Supp.1993) [5], *see, Hart v. State,* 537

---

4. Section 8.04(b) provides, "Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried."

5. Section 8.01(a) provides, "It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong."

S.W.2d 21, 24 (Tex.Crim.App.1976), a defendant, in availing himself of the said mitigation provisions, must prove that as a result of intoxication, he did not know his conduct was wrong. *Arnold,* 742 S.W.2d at 14. In the instant case, when asked directly if there was any evidence that appellant's intoxication produced temporary insanity, counsel for appellant replied that there was no evidence of temporary insanity, only evidence of "legal intoxication." Based upon such a response by appellant's counsel, there was no abuse of discretion for the trial court to refuse to include the requested instruction in the final written jury instructions. Point of error three is overruled.

▇▇▇▇ Appellant's final point of error complains that the trial court improperly received conflicting jury verdict forms. Appellant asserts that the jury foreman signed three verdict forms each providing for different punishments. Contrary to this assertion, the record before us reflects that only two verdict forms were signed by the foreman out of a possible three.[6] It is clear that one of the signed verdict forms provides for a period of incarceration for "Life" and "$0" fine, while the second signed verdict form provides only a period of incarceration for a term of "60 years." It is the duty of the trial judge to reject unresponsive, incomplete, or insufficient verdicts, call the problem to the attention of the jury, and then have the problem corrected with the jury's consent or have the jury sent out again to reconsider their verdict. *Reese v. State,* 773 S.W.2d 314, 317 (Tex.Crim.App.1989). This was obvious-

ly not done in the instant case so we must look to other cases for further assistance.

▇▇▇▇ The general rule is that a jury's verdict should be held good if the jury's intention can reasonably be ascertained. *Brinson v. State,* 570 S.W.2d 937, 939 (Tex. Crim.App.1978); *Ainsworth v. State,* 517 S.W.2d 274, 277 (Tex.Crim.App.1975); *Stewart v. State,* 422 S.W.2d 928, 929 (Tex.Crim. App.1968). Indeed, a verdict should receive a liberal rather than a strict construction and, when a finding of the jury can be reasonably ascertained, the verdict is sufficient. *Smart v. State,* 144 Tex.Crim. 93, 161 S.W.2d 97, 99 (1942); *Tapley v. State,* 673 S.W.2d 284, 290 (Tex.App.—San Antonio 1984, pet. ref'd). In the instant case, a reasonable conclusion to the dilemma is that the jury intended to assess appellant's punishment at sixty (60) years' confinement, with *no* fine. We reach this conclusion by asking the question: If the jury had intended to assess appellant's punishment at "Life" with "$0" fine instead of "60 years," what prevented the foreman from merely signing the first verdict form which provided *only* "Life" imprisonment with no option for a fine whatever? A reasonable and liberal construction of the verdict forms leads us to no other conclusion. The sentence of sixty years as pronounced in open court by the trial judge and reflected in the judgment and sentence was the jury's intended verdict. We find no error by the trial court, and certainly none which harmed appellant in any manner. *See,* TEX.R.APP.P. 81(b)(2). Point of error four is

---

6. The three verdict forms included in the record before us provide as follows:

    WE, THE JURY, find the defendant guilty as charged in the indictment and assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for LIFE.

    —————————
    FOREMAN

    **********

    WE, THE JURY, find the defendant guilty as charged in the indictment and assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for LIFE. We further assess a fine in the amount of $___0___ .

    (signed by)
    FOREMAN

    **********

    WE, THE JURY, find the defendant guilty as charged in the indictment, and assess punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ___60___ years.

    (signed by)
    FOREMAN

overruled, and the judgment and sentence of the trial court are affirmed.

AFFIRMED.