**Robert Eric WALTMON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–01–282 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Nov. 28, 2001.

Decided April 17, 2002.

Steven M. Hollis, Jasper, for appellant.

Guy James Gray, Criminal District Attorney, Patrick Hardy, Assistant Criminal District Attorney, Jasper, for state.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

The record before us reflects that appellant pleaded guilty without benefit of an agreed recommendation of punishment with the State. Appellant elected to have a jury assess his punishment. With appel-

lant's plea of guilty to Aggravated Sexual Assault in Cause No. 9136JD, the indictment in Cause No. 9137JD, also an Aggravated Sexual Assault, was dismissed by the State. Following the presentation of evidence to the jury by both sides, the jury assessed appellant's punishment at confinement in the Texas Department of Criminal Justice—Institutional Division for a term of life, and additionally assessed a fine of $10,000. Two issues are brought forth in this appeal, *viz:*

> Issue 1: The trial court committed material error calculated to injure the rights of Appellant by admitting into evidence in the punishment trial, over timely objection, pornographic photographs of Appellant and the victim in violation of Texas Code of Criminal Procedure Art. 37.07, Sec. 3(a).

> Issue 2: The trial court committed material error calculated to injure the rights of Appellant by admitting into evidence in the punishment trial, over timely objection, pornographic photographs of Appellant and the victim in violation of Texas Rule of Evidence 403.

The basic facts with regard to the offense are not in dispute. In essence, appellant sexually assaulted his two-year-old daughter on what appeared to be several occasions by penetrating her vaginal area with his penis and with his tongue. In analyzing Issue 1, we must provide a somewhat detailed account of the procedural history of the charges leading up to the day of trial.

The record reflects the indictment in Cause No. 9136JD was filed on March 27, 2001. On May 4, 2001, trial counsel filed a written request to the State for notice of its intent to introduce any extraneous·act or offense evidence in either the guilt/innocence or punishment phases of the trial, as per TEX.R. EVID. 404(b), and TEX.CODE CRIM. PROC. ANN. art. 37.07, sec. 3 (Vernon 1981 & Supp.2001). On May 17, 2001, a brief pre-trial hearing was held. At said hearing, the following colloquy took place between the parties and the trial court:

> [Trial Counsel]: Yes, sir. Just so the Court was aware, that I—I had filed—I don't know if I filed it separately or not. Might have been a motion on order for request for extraneous offenses, but I included that in the discovery order also.

> [State]: Judge, there is a request for extraneous offenses and the Court—we would ask the Court to grant that. We have no problem with that. They have a right to follow the law.

> THE COURT: All right. That'll be granted.

Moments later, the trial court formally arraigned appellant and he pleaded "not guilty" to the two pending indictments, Cause Nos. 9136JD and 9137JD.

The following day, May 18, 2001, the State generated a letter to trial counsel, the pertinent portions of which are reproduced as follows:

> Here is a list of *extraneous offenses* the State plans to use at trial in *State v. Robert Eric Waltmon.*

> **Aggravated Sexual Assault** involving the following victims:

> — [J.M.C.] in Bell County (Killeen) Texas on or about June 1998.

> — [V.E.] in Newton, and Sabine County (Pineland) Texas on or about September 1995. Also in Jasper County on or about 2000 & 2001.

> — [A.E.] in Newton, and Sabine County (Pineland) Texas on or about September 1995. Also in Jasper County on or about 2000 & 2001.

> — [O.E.] in Newton and Sabine County (Pineland) Texas on or about September 1995. Also in Jasper County on or about 2000 & 2001.

— [B.F.] in Jasper County on or about 1984.

— [K.D.] in Jasper County on or about 1982.

— [A.M.Y.] in Jasper County on or about 1992.

If you need clarification or have questions on these offenses, feel free to contact me.

Eleven days after the State's notice letter was generated and sent to trial counsel, the trial was scheduled to begin. On the day of trial, May 29, 2001, trial counsel filed a written motion in limine. The pertinent portion of said motion reads as follows:

**COMES NOW** ROBERT ERIC WALTMON, Defendant in the above styled and numbered cause, and moves the Court to instruct all counsel for the State to refrain in the presence or hearing of the jury panel, the jury, or any juror, witness, or other person, from making any statement pertaining to or inferring directly or indirectly to the nude and pornographic photographs and movies that the State intends to introduce into evidence against the Defendant at trial. The Defendant requests this upon the grounds that said photographs and movies are:

1. Evidence of an extraneous act, particularly the possession and trading of child pornography by the Defendant, which is the basis of an indictment against the Defendant pending in the U.S. District Court for the Eastern District of Texas. Said offense was not disclosed by the State as an extraneous act that it intended to introduce at trial against the Defendant, despite timely request for notice and an order of this Court that said notice be provided to the Defendant before trial; and/or

2. Although possibly relevant, their probative value is substantially out-

weighed by the danger of unfair prejudice, misleading the jury or needless presentation of cumulative evidence, in violation of Texas Rule of Evidence 403.

During a hearing in the trial court's chambers regarding appellant's motion in limine, the following discussion took place between the two attorneys for the State, trial counsel, and the trial court. Appellant was also present.

[Trial Counsel]: And secondly, Judge, this is the Extraneous Offense Notice that was provided to me in the case and I understand [State's Attorneys] have copies of it, and I'd offer that also into the record as Defendant's Exhibit No. 2.

THE COURT: All right. It's admitted for this hearing.

[Trial Counsel]: Judge, with respect—and here's a proposed order on this motion in limine at 9136JD. But with respect to this motion, beside the offense which he's charged with and he's pled guilty to, which is damning enough in itself, I must say, but the State has got plenty of pictures. First of all, there's some photographs with Mr. Waltmon and the child that's the victim in this case. I believe approximately 40 of those types of photographs. These are photographs of the child nude in so-called pornographic poses, some of which with the—at least part of the parts of the Defendant in them, his erect penis up against her vagina, the Defendant performing oral sex on the child.... Some of it neither—for instance, computer backgrounds, screen shots, things like that. As far as these pictures being admitted into evidence as stated in the motion in limine, the first objection that we've got to it is the pictures, whether they're the Defendant and the victim or these other approximately 600 pictures I talked about, are evidence in this pending Federal case

against the Defendant which—in which he's charged with trading child pornography over the internet, and as indicated in the motion and as shown by this extraneous offense notice, that the State did not indicate that that case was one of those extraneous offenses that they were going to offer into evidence, and that's—that's the first part of my objection right there. . . .

At this point in the hearing, the State informed the trial court of the guilty-plea agreement, and recognized that appellant reserved his rights under the motion in limine. At this point, appellant pleaded guilty to the allegations in Cause No. 9136JD. Following the plea of guilty, the trial court requested the State to respond to the motion in limine. The State initially responded that as for the "video," the depictions contained therein were proof of the offense alleged in Cause No. 9137JD and, therefore, appellant had notice that the "video" would be introduced as direct evidence of the aggravated sexual assault alleged in that cause. With regard to the photographs, the State made the following argument while apparently making reference to certain cases it felt supported its position that the photographs were same transaction contextual evidence and were, therefore, admissible even absent reasonable notice to appellant. The State attempted to explain its understanding of the law of "same transaction contextual" evidence to the trial court as follows:

[State]: Part of this offense as can be shown in a number of these pictures is on point with the offense in question, that being the penis penetrating the vulva or the female sexual organ in this case. Also, going back to the video that was under the indictment, that also was contextual evidence. All of this pornographic material is part of this case. You can't have one without the other. You can't take it away and say we're going to show you this and then leave a vacuum as to how all of this comes about, and that's pretty much is what indivisibly evidence is under the law.

We let the defense attorney and the defendant look at the whole file. They knew these pictures were there, they saw them coming, okay. They also knew that he was indicted for what he just pled to and also oral sex on this child, and because of that, Your Honor, and these cases here, Wilkerson and Lockhart, we would ask that this material be allowed into evidence.

After viewing the "video" portion of the evidence, and examining the thirteen photographs the State intended to introduce into evidence before the jury, the trial court made the following oral findings:

I further find that the video and the photographs constitute evidence that is indivisibly connected to the offense to which the Defendant has pled guilty; that they—that it is evidence that is part of the same transaction, contextual evidence rule or requirement of an existing State law, and that it is—will be admitted as the same transactual (sic) contextual evidence.

Other than the State's assertion to the trial court that the "video" depicted the offense alleged under Cause No. 9137JD (oral to genital contact), an assertion not contested by appellant,[1] the State made no attempt to identify which, if any, of the thirteen photographs contained in State's Exhibit 2 depicted the offense to which

---

1. We accept as true factual assertions made by counsel at trial which could have been, but were not, disputed by opposing counsel. *See*

*Pitts v. State,* 916 S.W.2d 507, 510 (Tex.Crim. App.1996).

appellant pleaded guilty. Additionally, it is obvious that the pending federal charges involve an entirely distinct and extraneous offense from the one appellant pleaded guilty to.

 As we noted in *White v. State,* 866 S.W.2d 78, 80 (Tex.App.-Beaumont 1993, no pet.), a plea of guilty to a felony offense before a jury is a unitary trial, not a bifurcated one; and such a plea admits the existence of all incriminating facts necessary to establish guilt. *See also Wilkerson v. State,* 736 S.W.2d 656, 659 (Tex. Crim.App.1987). In such situations, the introduction of evidence by the State is entirely proper; however, the sole issue for the jury is that of punishment. *White,* 866 S.W.2d at 80.

Article 37.07, section 3(a) of the Texas Code of Criminal Procedure provides, in part, that upon a finding of guilt, evidence may be offered by either party as to any matter the trial court deems relevant to "sentencing," and the evidence is not limited to the prior criminal record of the defendant. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2002). Section 3(g) of art. 37.07 provides:

(g) On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of ... Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

 Before enactment of section 3(g) of art. 37.07, the prosecution was prohibited from offering evidence of unadjudicated extraneous offenses or bad acts at the punishment phase of the trial. *See e.g., Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex.Crim.App.1992). Section 3(g) of the statute was added in 1993 to permit the prosecution to offer such evidence at the punishment phase of the trial. *See Brooks v. State,* 961 S.W.2d 396, 400 (Tex.App.-Houston [1st Dist.] 1997, no pet.) (First Court of Appeals took "judicial notice of the struggle between the legislature and the Court of Criminal Appeals over enlarging the scope of evidence admissible at the punishment stage of non-capital trials.") *See also Clewis v. State,* 922 S.W.2d 126, 160 (Tex.Crim.App.1996) (White, J., dissenting) (describing the struggle). Along with the addition of section 3(g) came the requirement of notice by the State upon timely request.

At trial, and in its appellate brief, the State essentially maintains that art. 37.07, section 3(g)'s notice requirement is inapplicable to the complained-of evidence because it is "same transaction contextual evidence." As authority for this proposition, the State cites four cases: *Patton v. State,* 25 S.W.3d 387 (Tex.App.-Austin 2000); *Hayden v. State,* 13 S.W.3d 69 (Tex. App.-Texarkana 2000); *Cole v. State,* 987 S.W.2d 893, 896 n. 1 (Tex.App.-Fort Worth 1998, pet. ref'd); and *Hodge v. State,* 940 S.W.2d 316 (Tex.App.-Eastland 1997).[2] In both *Patton* and *Hodge,* petitions for dis-

---

**2.** Except for *Cole,* the State's brief does not indicate the subsequent histories of the other three cases just mentioned.

cretionary review were refused. However, the Court of Criminal Appeals reversed the Sixth Court of Appeals in *Hayden,* and affirmed the trial court's judgment of conviction. *Hayden v. State,* 66 S.W.3d 269 (Tex.Crim.App.2001).[3] Apart from *Hayden,* we will explain why the cases cited by the State are of dubious precedential value concerning the specific issue before us. We will also discuss the portion of the Court of Criminal Appeals' opinion in *Hayden* we consider is applicable to the particular circumstances in the instant case.

In *Patton* and *Cole,* the basic issue was not *complete failure* to provide notice to the defendants upon a timely request; but either the adequacy or timeliness of the notice the State did provide to the respective defendants was at issue. Both *Patton* and *Cole* cite to *Hodge* as authority for the proposition that same transaction contextual evidence is not subject to the notice requirement of art. 37.07, section 3(g). *See Patton,* 25 S.W.3d at 392 n. 4; *Cole,* 987 S.W.2d at 896 n. 1. However, in *Cole,* the defendant requested timely notice under Rule 404(b), not under art. 37.07, section 3(g). *Cole,* 987 S.W.2d at 895. In *Patton,* the defendant's notice request was based on both Rule 404(b) and art. 37.07, section 3(g). *Patton,* 25 S.W.3d at 391.

*Hodge* was a capital murder case in which the State did not seek the death penalty. *Hodge,* 940 S.W.2d at 317 n. 2. Hodge apparently limited his notice request to the State to Rule 404(b) only. *Id.* at 318. Hodge objected to the State's introduction of evidence that the day following the murders, Hodge was arrested, along with four or five other men, after fleeing from a "stolen vehicle." *Id.* How-

ever, as the Court explained, the evidence indicated that Hodge's arrest, the day following the murders, was precipitated by police officers stopping the vehicle in which Hodge was a passenger, because the vehicle had been reported stolen. *Id.* at 318–19. As the Court noted, an accused's flight is admissible on the issue of his guilt. *Id.* at 319. Because of this, the circumstances surrounding the flight were necessary to provide the jury with the complete picture of the sequence of events surrounding the murders themselves. Without introducing testimony of the vehicle's status as "stolen," the jury could certainly have been confused as to how Hodge turned up in police custody in Corsicana, Texas, for murders committed in Dallas. *See id.* at 317, 319. The Eleventh Court held that such evidence was same transaction contextual evidence as explained in *Rogers v. State,* 853 S.W.2d 29 (Tex.Crim. App.1993), and *Mayes v. State,* 816 S.W.2d 79, 84–87 (Tex.Crim.App.1991). Of significance to the issue before us, the Eleventh Court pointed to the explicit language contained in Rule 404(b), which provides, in pertinent part, that "upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence *other than that arising in the same transaction.*" (emphasis added) An examination of art. 37.07, section 3(g) indicates that no such explicit "same transaction" language is set out as an exception to the notice requirement. Of the four cases relied upon by the State in the instant case, only *Patton* involved a request for notice under art. 37.07, section

---

3. The viability of that reversal is in question as the Court of Criminal Appeals granted rehearing on petition for discretionary review on February 6, 2002. As our reliance on *Hayden* is merely for instructive purposes, *see* harm analysis, *infra,* we believe the reasoning in our harm analysis is based upon the particular facts and circumstances in the instant case so that any revision of *Hayden,* no matter how drastic, will not affect our ultimate decision.

3(g).[4] An examination of *Patton* reveals the issue of "same transaction contextual evidence" was limited to what amounted to dicta contained in a footnote. *See Patton*, 25 S.W.3d at 392 n. 4. Also, *Patton* is entirely distinguishable from the instant case in that the State in *Patton* did indeed provide notice of the extraneous prior conviction in question, albeit the day before trial. *Id.* The Court in *Patton* was not analyzing a complete lack of notice by the State, but, instead, was looking at whether the notice provided by the State was reasonably timely. All of this is to say that we find the State's cases distinguishable in either their instructive or authoritative qualities.

 We are not convinced that art. 37.07, sections 3(a) & (g) amount to the functional equivalent of Rule 404(b). Indeed, section 3(a) explicitly excepts the application of Rules of Evidence 404 and 405 to punishment evidence on "any matter the court deems relevant to sentencing[.]" *See* art. 37.07, section 3(a)(1). Nevertheless, because art. 37.07, section 3(g) provides that the State's notice "shall be given in the same manner required by Rule 404(b)," cases involving the *adequacy* or *reasonableness* of Rule 404(b) notice may be instructive as to those specific "notice of intent" issues arising under section 3(g). *See Chimney v. State*, 6 S.W.3d 681, 694 n. 11 (Tex.App.-Waco 1999, pet. filed); *Dodgen v. State*, 924 S.W.2d 216, 219 (Tex.App.-Eastland 1996, pet. ref'd). More pertinent to the issue before us is the holding by the Tenth Court of Appeals

subsequent to *Chimney*, in which it set out the following:

> We recognize that section 3(g) also states that notice is given, "in the same *manner* required by Rule 404(b), Texas Rules of ... Evidence." *Id.* (emphasis added). Manner is defined as "a way, mode, method of doing anything, or mode of proceeding in any case or situation." BLACK'S LAW DICTIONARY 963 (6th ed.1990). Consequently, this portion relates only to the procedure governing a defendant's request and the State's response to that request, and not to the scope of the information to which the section applies.

*Jaubert v. State*, 65 S.W.3d 73, 84 (Tex. App.-Waco 2000) (opinion on petition for discretionary review), *reversed on other grounds*, 74 S.W.3d 1 (Tex.Crim.App.2002). As we appreciate this holding, any link between Rule 404(b) and art. 37.07, section 3(g) with regard to notice is limited to the "mechanics" of how the State provides a defendant with the extraneous offense or "bad act" information prior to trial. As for the *content* or *quality* of the information contained in the State's notice, we believe there can be no equating Rule 404(b) and art. 37.07, section 3(g) notice requirement because the nature of the guilt/innocence phase of a criminal trial is entirely distinct from the nature of the punishment phase of the trial. *See Murphy v. State*, 777 S.W.2d 44, 62–64 (Tex.Crim.App.1988) (discussion of admissibility of extraneous offenses at punishment phase of trial—prior to 1993 amendments to art. 37.07).

---

**4.** While the defendant in *Hayden* apparently sent both Rule 404(b) and art. 37.07, section 3(g) notice requests to the State, the Sixth Court of Appeals decided the issue exclusively on Rule 404(b) grounds, with a cursory observation in a footnote that "[t]he requirements *for notice of intent to introduce extraneous* offenses are the same according to Article

37.07, § 3(g) as they are with regard to TEX.R. EVID. 404(b)." *See Hayden*, 13 S.W.3d at 74 n. 5. In its opinion reversing the Sixth Court, the Court of Criminal Appeals explicitly avoided the issue of whether or not the extraneous offenses in question arose in the same transaction. *See Hayden*, 66 S.W.3d 269, 270 n. 1 (Tex.Crim.App.2001).

■ Thus, we do not find an exception in art. 37.07, section 3(g)'s notice of intent for same transaction contextual evidence. As noted above, it is clear that the 1993 amendments to art. 37.07 intended to erase any limits to admissibility of punishment phase evidence so long as the trial court deems such evidence "relevant to sentencing," and so long as the State, upon timely request, complies with the notice requirement. The explicit, but non-exclusive, list of such admissible punishment phase evidence includes: 1) the prior criminal record of the defendant, 2) the defendant's general reputation, 3) the defendant's character, 4) an opinion regarding the defendant's character, 5) the circumstances of the offense for which he is being tried, 6) any prior juvenile adjudications of delinquency if based on felony or jailable misdemeanor charges, and 7) "notwithstanding Rules 404 and 405" of the Rules of Evidence, "any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." *See* art. 37.07, section 3(a)(1).

■ Under the provisions of art. 37.07, section 3(a), therefore, we have no doubt the photographs and the extraneous federal offense were admissible during the State's presentation of evidence at the punishment phase of the trial in the instant case. Yet, because of the virtually unlimited scope of admissible punishment phase evidence under art. 37.07, section 3(a), the notice of intent provision of section 3(g) takes on a compellingly prophylactic nature. Rule 404(b) has been referred to as the "propensity rule," *see Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim.App.1991), because it provides that

evidence of other crimes, wrong, or acts is *not* admissible to prove the character of a person in order to show the person acted in conformity therewith during the guilt/innocence phase. Article 37.07, section 3(a), however, permits "other crimes, wrongs, or acts" evidence explicitly to show "propensity" as "propensity," among other things, has been determined by the Legislature as set forth in art. 37.07 to be relevant to sentencing. That being the case, a defendant is at least entitled, we believe, to be informed as to what the State intends to introduce into evidence for the punishment factfinder's consideration so as to be able to counter such evidence in whatever manner he considers most beneficial. We hold, therefore, that because of the virtually unlimited scope of "bad act" evidence admissible against a defendant at the punishment phase of a trial, there is no "same transaction" exception to the notice of intent requirement under art. 37.07, section 3(g).

■ In the instant case, the trial court erred in permitting the State to introduce any of the photographic evidence, with the exception of the "video" evidence depicting the offense alleged in Cause No. 9137JD, and erred in permitting the State to introduce any evidence referring to or describing his pending federal charge. We must now conduct a "harm" analysis. *See Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim. App.1997).

■ In *Johnson v. State*, 43 S.W.3d 1, 5 (Tex.Crim.App.2001), the Court held that it is the responsibility of the appellate court to assess harm after reviewing the record and that the burden to demonstrate whether the appellant was harmed by a trial court error does not rest on the appellant or the State. In the instant case, the appropriate standard of harm is to disregard the error unless a substantial right has been affected. TEX.R.APP. P.

44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). The following language taken from *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), has been adopted by reviewing courts in Texas as authoritative when conducting a substantial rights review under Rule 44.2(b):

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.* at 764–65, 66 S.Ct. at 1247–48, 90 L.Ed. at 1566–67 (citation and footnote omitted). *See also Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim.App.2001); *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000); *Jackson v. State,* 17 S.W.3d 664, 672 (Tex. Crim.App.2000); *Dorsey v. State,* 24 S.W.3d 921, 930 (Tex.App.-Beaumont 2000, no pet.).

In a very recent opinion, the Court of Criminal Appeals re-emphasized the necessity for a reviewing court to examine "the record as a whole" when conducting a harm analysis under Rule 44.2(b). *See Schutz v. State,* 63 S.W.3d 442, 444 (Tex. Crim.App.2001). As the Court noted, the reviewing court is to consider testimony, physical evidence, the nature of the evidence supporting the verdict, the character of the error and its relationship to other evidence, the trial court's instructions to the jury, the theories of the respective cases for the State and the defense, arguments to the jury, and relevant portions of the voir dire. *Id.* at 444–45.

We begin a "substantial rights" harm-review by determining the nature of the "right" that was at risk of being affected. For instructive purposes, we consider the recent case out of the Court of Criminal Appeals, *Hayden v. State, supra.*[5] Although *Hayden* was a case involving Rule 404(b) notice of intent, it is nevertheless enlightening. The issue in *Hayden* was whether the State's delivery to defense counsel of witness statements containing extraneous offenses would be sufficient notice of the State's intent to subsequently introduce said extraneous offenses under Rule 404(b). *Hayden,* 66 S.W.3d at 271. Significantly, for our purposes, the Court engaged in the following analysis:

> Because the purpose of Rule 404(b) notice is to prevent surprise, we agree with the cases indicating that delivery to the defense of witness statements detailing extraneous offenses may, in an appropriate case, satisfy the notice requirements of Rule 404(b). The rule requires "reasonable" notice. Whether the delivery of witness statements constitutes reasonable notice depends in part on the timing of that delivery. If the State gave the statements to the defense shortly after receiving the request for notice, the implicit statement is: "These are the extraneous offenses

---

**5.** *See* our footnote 4, in this opinion, *supra.*

that we intend to offer in the case-in-chief." The longer the time lapse between the receipt of the notice and the delivery of the witness statements, the less likely that the recipient will conclude, "This is the evidence that responds to my request." Because a reasonable conclusion to be drawn when delivery of witness statements follows upon the heels of a timely request for notice, is that the State intends to use the evidence, "reasonable" notice is implicit in the delivery.... The prosecution is not required to make a written response concerning its intent, although this is certainly the recommended procedure. Although the better practice is for the prosecutor to state explicitly the intent to introduce extraneous offense evidence, the trial court did not abuse its discretion in concluding that delivery of witness statements to the defense in this particular case provided appellant with reasonable notice.

*Id.* at 271 (footnotes omitted). The majority in *Hayden* agreed with the portion of Judge Meyers' dissent that the "spirit" of Rule 404(b) is to allow a defendant adequately to prepare to defend against the extraneous offense evidence, and that the Rules should not be interpreted to encourage "trial by ambush." *Id.* at 271 n. 16.

■ Under the Court's analysis, a very prompt delivery by the State of some document that contains extraneous offenses, following a timely request for notice by a defendant, permits defense counsel to reasonably conclude that the State intends to introduce evidence of the extraneous offenses contained in said document. Recall the timing of the sequence of events in the instant case: March 27, 2001—indictments filed; May 4, 2001—appellant's written request to State for notice under art. 37.07, section 3; May 17, 2001—pre-trial hearing at which State joined appellant's request

for notice, with trial court granting accompanying motion; May 18, 2001—State's written notice of intent generated and sent to appellant; May 29, 2001—State apparently informs appellant of its intent to introduce photographs and extraneous federal charge.

In considering the *Hayden* Court's emphasis on the importance of the timing of the State's notice of intent *vis-a-vis* the defendant's request for notice, the glaring question that is raised in the instant case is whether trial counsel, having been presented with the written State's notice of intent very shortly after the pre-trial hearing in which the State virtually insisted that the trial court grant appellant's request, could not have reasonably concluded that the State's written notice contained *ALL* of the extraneous offense evidence the State planned to introduce at the trial? If trial counsel could have reasonably concluded the State's quickly drafted and delivered written notice of intent contained *ALL* of the State's extraneous offense evidence it intended to introduce at trial, was trial counsel and appellant "ambushed" on the day of trial when informed of the State's intent to introduce the photographs and extraneous federal charge evidence?

Clearly, then, the nature of the right potentially affected was appellant's right to be informed of what extraneous offense or bad act evidence the State intended to introduce so as to be able to prepare a punishment case-in-chief that would counter or mitigate said extraneous offense or bad act evidence. Having said this, we now examine the entire record as mandated under *Schutz.* Recall that appellant pleaded guilty to the instant offense and elected for a jury to assess punishment. As such, our record consists of a brief voir dire proceeding and a sentencing proceeding. The record also includes a volume of the reporter's record from pre-trial hearings, and an exhibit volume.

An examination of the voir dire proceeding reveals no mention of the erroneously admitted photographs or the pending federal charge. The State presented six witnesses in its case-in-chief on punishment. Appellant presented two witnesses in his case-in-chief. There were no rebuttal witnesses or evidence. Although very brief, the State's opening statement to the jury warned of "photographs and things" that would be "hard to handle." The State also mentions the "computer" and "internet" aspect of its case, and then begins to describe what the photographs depict in greater detail, including the observation: "Couple of photographs of this little girl and what they call bondage, tied up, and— it's pretty bad stuff."

Of the State's six witnesses, two were agents of the Federal Bureau of Investigation (F.B.I.). One witness, Joe Sterling, was an investigator with the Jasper County Sheriff's Office. The State's remaining witnesses consisted of appellant's sister-in-law, who testified that appellant had sexually assaulted her in June of 1998, when she was 12 years old while her sister, appellant's wife, was away on a trip; appellant's wife, who testified that she felt that the victim had been "traumatized" by the sexual assault committed by appellant; and a long-time acquaintance of appellant whose young daughters appellant admitted to having had sexual contact with on various occasions over the years. As the State's notice did include the names and incidents involving these children, said extraneous offense testimony was admissible.

The record indicates that the testimony of the two F.B.I. agents was extensive and detailed with regard to the existence, discovery, and recovery of the photographs contained in State's Exhibit 2, and included further testimony detailing the recovery of a number of other photographs of nude children recovered from appellant's computer, and a general description of the activities of internet traders of child pornography worldwide. Appellant's witnesses consisted of his mother and his grandmother, both of whom testified as to their surprise that appellant could have engaged in the acts he admitted to having committed. Appellant rested his case following this brief bit of testimony.

The State chose to provide initial and final closing remarks to the jury with appellant's final remarks sandwiched in-between. Although the entirety of the State's initial and closing remarks was very brief, taking up only a little over two pages of the reporter's record, both prosecutors strongly emphasized the photographs contained in State's Exhibit 2 and what said photographs depicted. The following was taken from the State's initial remarks:

> Now, you wonder what the punishment is for someone that does this kind of thing, and you all have to decide within yourself. You're looking at a term in the penitentiary from 5 to 99 years, or life. I'm not going to sit here, you've seen the evidence and you have the right to get any of these pictures back there or anything else and look at it again, and I'm not going to take much of your time because those pictures speak more than I can say.

The following was taken from the State's final remarks to the jury:

> There—these pictures y'all never did look at them up close. They're a little bit hard. There's one in there, it's 13, that one breaks my heart every time I look at it. I can't quite imagine the mind-set of a man that binds his daughter up and ties her up and takes that picture and—and then publishes it on the internet. . . .

> There are two verdict forms. One of them is a range of years between 5 and 99. The second verdict form is a sen-

tence of life imprisonment. Now, when I look at that picture and when I think of that video that I sat here and watched with y'all and have watched before, I don't think there is any reasonable judgment to be made except to take the maximum opportunity that we have to prevent another victim; and I—I recommend to you the life sentence, . . .

Were we to conclude our examination of the record at this point, we would have difficulty in having a fair assurance that the error did not influence the jury, or influenced the jury only slightly. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim.App.2000). Indeed, a recent case out of the Fifth Circuit reversed a defendant's conviction for possession of child pornography because the State insisted upon introducing before the jury, over a timely Rule 404(b) objection,[6] written narratives depicting violent rape and torture to children. *See U.S. v. Grimes*, 244 F.3d 375, 385 (5th Cir.2001). The Court concluded its analysis with the following:

> Having read the narratives, we cannot agree with the district court's decision and are unpersuaded by the government's argument. The narratives are vile in their graphic and violent nature: young girls in chains, a young girl in handcuffs, and references to blood, for example. Perhaps on retrial the government can redact a different portion of the narratives and attempt to reintroduce them. Should it attempt to do so, it should be wary of introducing gruesome violence, in light of the fact that the charged pictures are non-violent in nature.

*Id.* We could make a similar observation with regard to the actual charged offense (sexual assault by vaginal penetration of

appellant's penis) *vis-a-vis* the depictions of graphic bondage and other violence in certain of the photographs included in State's Exhibit 2.

Nevertheless, the record before us does include admissible punishment evidence that basically portrays appellant as a sexual predator of very young, female children. State's Exhibit 8, appellant's own statement, admitted without objection, included described sexual incidents involving the victim, as well as a written description of what each of the thirteen photographs contained in State's Exhibit 2 depicted. Said statement also contained admissions of sexual contact of various types upon different female children ages 3–years–old, 5 to 7–years–old, and 4–years–old. Some of these previous incidents of sexual contact occurred approximately fourteen years prior to the day of the statement.

Also included as admissible punishment evidence was the "video" apparently depicting appellant performing oral sex on the victim. As we noted at the outset of this opinion, this "video" was described by the State as representing the offense charged in Cause No. 3137JD, the aggravated sexual assault dismissed by the State upon appellant's guilty plea.

While the cases *Johnson, King, and Kotteakos, supra,* contain explicit standards by which reviewing courts are to measure harm stemming from non-constitutional error, we find useful the following language contained in *O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995):

> But, we consider here the legal rule that governs the special circumstance in which record review leaves the conscientious judge in grave doubt about the likely effect of an error on the jury's

---

**6.** Under Fifth Circuit law, a review for abuse of discretion the admission of evidence pursuant to Rule 404(b) involves a two-pronged inquiry which essentially encompasses a Rule 401 (relevancy) inquiry, and a Rule 403 (probative v. prejudicial) inquiry. *See U.S. v. Grimes,* 244 F.3d at 383–84.

verdict. (By "grave doubt" we mean that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.) We conclude that the uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict (*i.e.,* as if it had a "substantial and injurious effect or influence in determining the jury's verdict.") *Id.* at 435, 115 S.Ct. at 994, 130 L.Ed.2d at 951. In the instant case, under the particular procedural circumstances of a defendant who pleaded guilty to the jury, our examination of the *entire* record before us simply does not leave us with grave doubt about whether the error, although exacerbated by the various actions of the State, had a substantial and injurious effect on the jury's decision as to the proper punishment to assess. As the jury assessed the maximum punishment available for the offense charged, the unmistakable message the jury was sending to appellant was that he was not going to be permitted to prey on young children for his sexual desires ever again. There was certainly an abundance of properly admitted punishment evidence in support of such a verdict—and message. Furthermore, although appellant was given reasonable notice of the other properly admitted extraneous offense evidence involving sexual contact with other young girls, his case-in-chief made no real attempt to counteract or mitigate the damaging effects of such evidence. Appellant does not suggest what, if anything, he or his trial counsel would have done differently had the State's notice letter included the fact that the State intended to introduce the photographs in question and the pending federal offense.

We conclude that what doubt there is of the error's effect on the jury's punishment decision, it does not rise to "grave doubt" so as to permit us to vacate the punishment assessed. We therefore overrule appellant's first issue. The result of our harm analysis conducted under issue one precludes the need to conduct an analysis of the evidence in question under Rule 403. This is so because even were we to say that the evidence in question was substantially more prejudicial than probative, we would conduct an identical harm analysis under Rule 44.2(b). *See Reese v. State,* 33 S.W.3d 238, 243 (Tex.Crim.App.2000). We therefore overrule appellate issue two and affirm the judgment and the sentence of the trial court.

AFFIRMED.

DON BURGESS, Justice, concurring and dissenting.

I concur with the majority when they hold "the trial court erred in permitting the State to introduce any of the photographic evidence, with the exception of the 'video' evidence depicting the offense alleged in Cause No. 9137JD, and erred in permitting the State to introduce any evidence referring to or describing his pending federal charge." Unfortunately, I respectfully dissent to the majority's conclusion that the error was harmless.[1] The majority opines there "was certainly an abundance of properly admitted punishment evidence in support of such a verdict" [the maximum], yet we will never know because the properly admitted punishment evidence was intertwined with the erroneous admitted evidence. Unfortunately, under the appropriate standard of review, there must be some type of qualitative analysis of the evidence. As noted by the majority, the proper evidence consisted of testimony by other vic-

---

1. My dissent is reluctant, but necessary; reluctant because appellant is a confessed pedophile who abused and exploited his infant daughter, but necessary because even atrocious acts must be proved by properly admitted evidence.

tims, Waltmon's written statement where he described the photographs in State's exhibit two and admitted committing various unlawful sexual acts with children plus a video of Waltmon performing oral sex on the victim.

While Waltmon's written statement is repulsive, the photographs are not only repulsive but revolting. A comparison[2] of the statements and photographs are at Appendix One.[3]

This case, in my view, epitomizes the old saying "A picture is worth a thousand words."[4] It is one thing to listen to or read Waltmon's words and yet another to see the photographs. Courts have long recognized that pictures are powerful, demonstrative evidence.[5] Just recently the Court of Criminal Appeals held the erroneous admission of a photograph of the murder victim and her unborn child lying in a casket was not harmless in the penalty phase of a capital murder prosecution. *Reese v. State*, 33 S.W.3d 238, 239 (Tex. Crim.App.2000)

The majority adopts the "grave doubt" standard of *O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), yet seems to focus on the common[6] definition of the word "grave" rather than the definition supplied by the Supreme Court.[7] Looking at all the record before us, I can

have no fair assurance that the error did not influence the jury, or had but a slight effect.[8] *Reese*, 33 S.W.3d at 244. At the very least, the question of whether the photographic evidence influenced the jury is evenly balanced, therefore within the "grave doubt" range. Consequently, I would reverse and remand for a new punishment hearing.

---

**2.** I readily admit this is a highly subjective exercise, yet my descriptions of the photographs do not convey the images.

**3.** Because of explicit, but necessary language, Appendix One is ordered "Do Not Publish."

**4.** Fred R. Barnard, *Printers' Ink*, Mar. 10, 1927, at 114 (Source: *The Home Book of Proverbs, Maxims and Familiar Phrases*, Burton Stevenson, ed., 1948)

**5.** For an example of how *one* photograph can have an influential effect *see Langford v. Blackman*, 790 S.W.2d 127, 132 (Tex.App.-Beaumont), *rev'd*, 795 S.W.2d 742 (Tex.1990)(emphasis added).

**6.** "Of importance; authoritative; weighty; sedate; serious." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 992 (3d ed.1981).

**7.** "By 'grave doubt' we mean that, in the judge's mind the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435, 115 S.Ct. at 994, 130 L.Ed.2d at 951.

**8.** As noted by the majority, the State alluded to the photographs in closing arguments.