In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-282 CR


____________________



ROBERT ERIC WALTMON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 1-A District Court


Jasper County, Texas


Trial Cause No. 9136JD






OPINION


 The record before us reflects that appellant pleaded guilty without benefit of an
agreed recommendation of punishment with the State. Appellant elected to have a jury
assess his punishment. With appellant's plea of guilty to Aggravated Sexual Assault in
Cause No. 9136JD, the indictment in Cause No. 9137JD, also an Aggravated Sexual
Assault, was dismissed by the State. Following the presentation of evidence to the jury
by both sides, the jury assessed appellant's punishment at confinement in the Texas
Department of Criminal Justice - Institutional Division for a term of life, and additionally
assessed a fine of $10,000. Two issues are brought forth in this appeal, viz:

 Issue 1: The trial court committed material error calculated to injure the
rights of Appellant by admitting into evidence in the punishment trial, over
timely objection, pornographic photographs of Appellant and the victim in
violation of Texas Code of Criminal Procedure Art. 37.07, Sec. 3(a).


 Issue 2: The trial court committed material error calculated to injure the
rights of Appellant by admitting into evidence in the punishment trial, over
timely objection, pornographic photographs of Appellant and the victim in
violation of Texas Rule of Evidence 403. 


 The basic facts with regard to the offense are not in dispute. In essence, appellant
sexually assaulted his two-year-old daughter on what appeared to be several occasions by
penetrating her vaginal area with his penis and with his tongue. In analyzing Issue 1, we
must provide a somewhat detailed account of the procedural history of the charges leading
up to the day of trial.

 The record reflects the indictment in Cause No. 9136JD was filed on March 27,
2001. On May 4, 2001, trial counsel filed a written request to the State for notice of its
intent to introduce any extraneous act or offense evidence in either the guilt/innocence or
punishment phases of the trial, as per Tex. R. Evid. 404(b), and Tex. Code Crim. Proc.
Ann. art. 37.07, sec. 3 (Vernon 1981 & Supp. 2001). On May 17, 2001, a brief pre-trial
hearing was held. At said hearing, the following colloquy took place between the parties
and the trial court: 

 [Trial Counsel]: Yes, sir. Just so the Court was aware, that I - - I
had filed - - I don't know if I filed it separately or not. Might have been a
motion on order for request for extraneous offenses, but I included that in
the discovery order also.


 [State]: Judge, there is a request for extraneous offenses and the
Court - - we would ask the Court to grant that. We have no problem with
that. They have a right to follow the law. 


 THE COURT: All right. That'll be granted.


Moments later, the trial court formally arraigned appellant and he pleaded "not guilty" to
the two pending indictments, Cause Nos. 9136JD and 9137JD. 

 The following day, May 18, 2001, the State generated a letter to trial counsel, the
pertinent portions of which are reproduced as follows: 

 Here is a list of extraneous offenses the State plans to use at trial in State vs.
Robert Eric Waltmon. 


 Aggravated Sexual Assault involving the following victims:


 - - [J.M.C.] in Bell County (Killeen) Texas on or about June
1998.


 - - [V.E.] in Newton, and Sabine County (Pineland) Texas on or
about September 1995. Also in Jasper County on or about
2000 & 2001.


 - - [A.E.] in Newton, and Sabine County (Pineland) Texas on or
about September 1995. Also in Jasper County on or about
2000 & 2001.


 - - [O.E.] in Newton and Sabine County (Pineland) Texas on or
about September 1995. Also in Jasper County on or about
2000 & 2001. 


 - - [B.F.] in Jasper County on or about 1984.


 - - [K.D.] in Jasper County on or about 1982.


 - - [A.M.Y.] in Jasper County on or about 1992.


 If you need clarification or have questions on these offenses, feel free to
contact me.


 Eleven days after the State's notice letter was generated and sent to trial counsel,
the trial was scheduled to begin. On the day of trial, May 29, 2001, trial counsel filed a
written motion in limine. The pertinent portion of said motion reads as follows:

 COMES NOW ROBERT ERIC WALTMON, Defendant in the above
styled and numbered cause, and moves the Court to instruct all counsel for
the State to refrain in the presence or hearing of the jury panel, the jury, or
any juror, witness, or other person, from making any statement pertaining
to or inferring directly or indirectly to the nude and pornographic
photographs and movies that the State intends to introduce into evidence
against the Defendant at trial. The Defendant requests this upon the grounds
that said photographs and movies are:


 1. Evidence of an extraneous act, particularly the possession and
trading of child pornography by the Defendant, which is the basis of an
indictment against the Defendant pending in the U.S. District Court for the
Eastern District of Texas. Said offense was not disclosed by the State as an
extraneous act that it intended to introduce at trial against the Defendant,
despite timely request for notice and an order of this Court that said notice
be provided to the Defendant before trial; and/or


 2. Although possibly relevant, their probative value is substantially
outweighed by the danger of unfair prejudice, misleading the jury or
needless presentation of cumulative evidence, in violation of Texas Rule of
Evidence 403. 


 During a hearing in the trial court's chambers regarding appellant's motion in
limine, the following discussion took place between the two attorneys for the State, trial
counsel, and the trial court. Appellant was also present. 

 [Trial Counsel]: And secondly, Judge, this is the Extraneous Offense
Notice that was provided to me in the case and I understand [State's
Attorneys] have copies of it, and I'd offer that also into the record as
Defendant's Exhibit No. 2.


 THE COURT: All right. It's admitted for this hearing.


 [Trial Counsel]: Judge, with respect - - and here's a proposed order
on this motion in limine at 9136JD. But with respect to this motion, beside
the offense which he's charged with and he's pled guilty to, which is
damning enough in itself, I must say, but the State has got plenty of pictures. 
First of all, there's some photographs with Mr. Waltmon and the child that's
the victim in this case. I believe approximately 40 of those types of
photographs. These are photographs of the child nude in so-called
pornographic poses, some of which with the - - at least part of the parts of
the Defendant in them, his erect penis up against her vagina, the Defendant
performing oral sex on the child. . . . Some of it neither - - for instance,
computer backgrounds, screen shots, things like that. As far as these
pictures being admitted into evidence as stated in the motion in limine, the
first objection that we've got to it is the pictures, whether they're the
Defendant and the victim or these other approximately 600 pictures I talked
about, are evidence in this pending Federal case against the Defendant which
- - in which he's charged with trading child pornography over the internet,
and as indicated in the motion and as shown by this extraneous offense
notice, that the State did not indicate that that case was one of those
extraneous offenses that they were going to offer into evidence, and that's -
- that's the first part of my objection right there. . . . 


 At this point in the hearing, the State informed the trial court of the guilty-plea
agreement, and recognized that appellant reserved his rights under the motion in limine. 
At this point, appellant pleaded guilty to the allegations in Cause No. 9136JD. Following
the plea of guilty, the trial court requested the State to respond to the motion in limine. 
The State initially responded that as for the "video," the depictions contained therein were
proof of the offense alleged in Cause No. 9137JD and, therefore, appellant had notice that
the "video" would be introduced as direct evidence of the aggravated sexual assault alleged
in that cause. With regard to the photographs, the State made the following argument
while apparently making reference to certain cases it felt supported its position that the
photographs were same transaction contextual evidence and were, therefore, admissible
even absent reasonable notice to appellant. The State attempted to explain its understanding
of the law of "same transaction contextual" evidence to the trial court as follows: 

 [State]: Part of this offense as can be shown in a number of these
pictures is on point with the offense in question, that being the penis
penetrating the vulva or the female sexual organ in this case. Also, going
back to the video that was under the indictment, that also was contextual
evidence. All of this pornographic material is part of this case. You can't
have one without the other. You can't take it away and say we're going to
show you this and then leave a vacuum as to how all of this comes about,
and that's pretty much is what indivisibly evidence is under the law. 


 We let the defense attorney and the defendant look at the whole file. 
They knew these pictures were there, they saw them coming, okay. They
also knew that he was indicted for what he just pled to and also oral sex on
this child, and because of that, Your Honor, and these cases here, Wilkerson
and Lockhart, we would ask that this material be allowed into evidence. 


 After viewing the "video" portion of the evidence, and examining the thirteen
photographs the State intended to introduce into evidence before the jury, the trial court
made the following oral findings: 

 I further find that the video and the photographs constitute evidence
that is indivisibly connected to the offense to which the Defendant has pled
guilty; that they - - that it is evidence that is part of the same transaction,
contextual evidence rule or requirement of an existing State law, and that it
is - - will be admitted as the same transactual (sic) contextual evidence.


Other than the State's assertion to the trial court that the "video" depicted the offense
alleged under Cause No. 9137JD (oral to genital contact), an assertion not contested by
appellant, (1) the State made no attempt to identify which, if any, of the thirteen photographs
contained in State's Exhibit 2 depicted the offense to which appellant pleaded guilty. 
Additionally, it is obvious that the pending federal charges involve an entirely distinct and
extraneous offense from the one appellant pleaded guilty to. 

 As we noted in White v. State, 866 S.W.2d 78, 80 (Tex. App.--Beaumont 1993, no
pet.), a plea of guilty to a felony offense before a jury is a unitary trial, not a bifurcated
one; and such a plea admits the existence of all incriminating facts necessary to establish
guilt. See also Wilkerson v. State, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987). In such
situations, the introduction of evidence by the State is entirely proper; however, the sole
issue for the jury is that of punishment. White, 866 S.W.2d at 80. 

 Article 37.07, section 3(a) of the Texas Code of Criminal Procedure provides, in
part, that upon a finding of guilt, evidence may be offered by either party as to any matter
the trial court deems relevant to "sentencing," and the evidence is not limited to the prior
criminal record of the defendant. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)
(Vernon Supp. 2002). Section 3(g) of art. 37.07 provides:

 (g) On timely request of the defendant, notice of intent to introduce
evidence under this article shall be given in the same manner required by
Rule 404(b), Texas Rules of . . . Evidence. If the attorney representing the
state intends to introduce an extraneous crime or bad act that has not resulted
in a final conviction in a court of record or a probated or suspended
sentence, notice of that intent is reasonable only if the notice includes the
date on which and the county in which the alleged crime or bad act occurred
and the name of the alleged victim of the crime or bad act. The requirement
under this subsection that the attorney representing the state give notice
applies only if the defendant makes a timely request to the attorney
representing the state for the notice.


 Before enactment of section 3(g) of art. 37.07, the prosecution was prohibited from
offering evidence of unadjudicated extraneous offenses or bad acts at the punishment phase
of the trial. See e.g., Grunsfeld v. State, 843 S.W.2d 521, 523 (Tex. Crim. App. 1992). 
Section 3(g) of the statute was added in 1993 to permit the prosecution to offer such
evidence at the punishment phase of the trial. See Brooks v. State, 961 S.W.2d 396, 400
(Tex. App.--Houston [1st Dist.] 1997, no pet.) (First Court of Appeals took "judicial
notice of the struggle between the legislature and the Court of Criminal Appeals over
enlarging the scope of evidence admissible at the punishment stage of non-capital trials.") 
See also Clewis v. State, 922 S.W.2d 126, 160 (Tex. Crim. App. 1996) (White, J.,
dissenting) (describing the struggle). Along with the addition of section 3(g) came the
requirement of notice by the State upon timely request. 

 At trial, and in its appellate brief, the State essentially maintains that art. 37.07,
section 3(g)'s notice requirement is inapplicable to the complained-of evidence because it
is "same transaction contextual evidence." As authority for this proposition, the State cites
four cases: Patton v. State, 25 S.W.3d 387 (Tex. App.--Austin 2000); Hayden v. State,
13 S.W.3d 69 (Tex. App.--Texarkana 2000); Cole v. State, 987 S.W.2d 893, 896 n. 1
(Tex. App.--Fort Worth 1998, pet. ref'd); and Hodge v. State, 940 S.W.2d 316 (Tex.
App.--Eastland 1997). (2) In both Patton and Hodge, petitions for discretionary review were
refused. However, the Court of Criminal Appeals reversed the Sixth Court of Appeals in
Hayden, and affirmed the trial court's judgment of conviction. Hayden v. State, No. 610-00, 2001 WL 1414287 (Tex. Crim. App. Nov. 14, 2001). (3) Apart from Hayden, we will
explain why the cases cited by the State are of dubious precedential value concerning the
specific issue before us. We will also discuss the portion of the Court of Criminal
Appeals' opinion in Hayden we consider is applicable to the particular circumstances in
the instant case. 

 In Patton and Cole, the basic issue was not complete failure to provide notice to the
defendants upon a timely request; but either the adequacy or timeliness of the notice the
State did provide to the respective defendants was at issue. Both Patton and Cole cite to
Hodge as authority for the proposition that same transaction contextual evidence is not
subject to the notice requirement of art. 37.07, section 3(g). See Patton, 25 S.W.3d at 392
n. 4; Cole, 987 S.W.2d at 896 n. 1. However, in Cole, the defendant requested timely
notice under Rule 404(b), not under art. 37.07, section 3(g). Cole, 987 S.W.2d at 895. 
In Patton, the defendant's notice request was based on both Rule 404(b) and art. 37.07,
section 3(g). Patton, 25 S.W.3d at 391. 

 Hodge was a capital murder case in which the State did not seek the death penalty. 
Hodge, 940 S.W.2d at 317 n. 2. Hodge apparently limited his notice request to the State
to Rule 404(b) only. Id. at 318. Hodge objected to the State's introduction of evidence
that the day following the murders, Hodge was arrested, along with four or five other men,
after fleeing from a "stolen vehicle." Id. However, as the Court explained, the evidence
indicated that Hodge's arrest, the day following the murders, was precipitated by police
officers stopping the vehicle in which Hodge was a passenger, because the vehicle had
been reported stolen. Id. at 318-19. As the Court noted, an accused's flight is admissible
on the issue of his guilt. Id. at 319. Because of this, the circumstances surrounding the
flight were necessary to provide the jury with the complete picture of the sequence of
events surrounding the murders themselves. Without introducing testimony of the
vehicle's status as "stolen," the jury could certainly have been confused as to how Hodge
turned up in police custody in Corsicana, Texas, for murders committed in Dallas. See
id. at 317, 319. The Eleventh Court held that such evidence was same transaction
contextual evidence as explained in Rogers v. State, 853 S.W.2d 29 (Tex. Crim. App.
1993), and Mayes v. State, 816 S.W.2d 79, 84-87 (Tex. Crim. App. 1991). Of
significance to the issue before us, the Eleventh Court pointed to the explicit language
contained in Rule 404(b), which provides, in pertinent part, that "upon timely request by
the accused in a criminal case, reasonable notice is given in advance of trial of intent to
introduce in the State's case-in-chief such evidence other than that arising in the same
transaction." (emphasis added) An examination of art. 37.07, section 3(g) indicates that
no such explicit "same transaction" language is set out as an exception to the notice
requirement. Of the four cases relied upon by the State in the instant case, only Patton
involved a request for notice under art. 37.07, section 3(g). (4) An examination of Patton
reveals the issue of "same transaction contextual evidence" was limited to what amounted
to dicta contained in a footnote. See Patton, 25 S.W.3d at 392 n. 4. Also, Patton is
entirely distinguishable from the instant case in that the State in Patton did indeed provide
notice of the extraneous prior conviction in question, albeit the day before trial. Id. The
Court in Patton was not analyzing a complete lack of notice by the State, but, instead, was
looking at whether the notice provided by the State was reasonably timely. All of this is
to say that we find the State's cases distinguishable in either their instructive or
authoritative qualities.

 We are not convinced that art. 37.07, sections 3(a) & (g) amount to the functional
equivalent of Rule 404(b). Indeed, section 3(a) explicitly excepts the application of Rules
of Evidence 404 and 405 to punishment evidence on "any matter the court deems relevant
to sentencing[.]" See art. 37.07, section 3(a)(1). Nevertheless, because art. 37.07, section
3(g) provides that the State's notice "shall be given in the same manner required by Rule
404(b)," cases involving the adequacy or reasonableness of Rule 404(b) notice may be
instructive as to those specific "notice of intent" issues arising under section 3(g). See
Chimney v. State, 6 S.W.3d 681, 694 n. 11 (Tex. App.--Waco 1999, pet. filed); Dodgen
v. State, 924 S.W.2d 216, 219 (Tex. App.--Eastland 1996, pet. ref'd). More pertinent to
the issue before us is the holding by the Tenth Court of Appeals subsequent to Chimney,
in which it set out the following:

 We recognize that section 3(g) also states that notice is given, "in the
same manner required by Rule 404(b), Texas Rules of . . . Evidence." Id.
(emphasis added). Manner is defined as "a way, mode, method of doing
anything, or mode of proceeding in any case or situation." Black's Law
Dictionary 963 (6th ed. 1990). Consequently, this portion relates only to
the procedure governing a defendant's request and the State's response to
that request, and not to the scope of the information to which the section
applies. 


Jaubert v. State, 65 S.W.3d 73, 84 (Tex. App.--Waco 2000) (opinion on petition for
discretionary review), reversed on other grounds, No. 1260-01 - 0264-01, 2002 WL
531107 (Tex. Crim. App. April 10, 2002). As we appreciate this holding, any link
between Rule 404(b) and art. 37.07, section 3(g) with regard to notice is limited to the
"mechanics" of how the State provides a defendant with the extraneous offense or "bad
act" information prior to trial. As for the content or quality of the information contained
in the State's notice, we believe there can be no equating Rule 404(b) and art. 37.07,
section 3(g) notice requirement because the nature of the guilt/innocence phase of a
criminal trial is entirely distinct from the nature of the punishment phase of the trial. See
Murphy v. State, 777 S.W.2d 44, 62-64 (Tex. Crim. App. 1988) (discussion of
admissibility of extraneous offenses at punishment phase of trial - - prior to 1993
amendments to art. 37.07). 

 Thus, we do not find an exception in art. 37.07, section 3(g)'s notice of intent for
same transaction contextual evidence. As noted above, it is clear that the 1993
amendments to art. 37.07 intended to erase any limits to admissibility of punishment phase
evidence so long as the trial court deems such evidence "relevant to sentencing," and so
long as the State, upon timely request, complies with the notice requirement. The explicit,
but non-exclusive, list of such admissible punishment phase evidence includes: 1) the prior
criminal record of the defendant, 2) the defendant's general reputation, 3) the defendant's
character, 4) an opinion regarding the defendant's character, 5) the circumstances of the
offense for which he is being tried, 6) any prior juvenile adjudications of delinquency if
based on felony or jailable misdemeanor charges, and 7) "notwithstanding Rules 404 and
405" of the Rules of Evidence, "any other evidence of an extraneous crime or bad act that
is shown beyond a reasonable doubt by evidence to have been committed by the defendant
or for which he could be held criminally responsible, regardless of whether he has
previously been charged with or finally convicted of the crime or act." See art. 37.07,
section 3(a)(1). 

 Under the provisions of art. 37.07, section 3(a), therefore, we have no doubt the
photographs and the extraneous federal offense were admissible during the State's
presentation of evidence at the punishment phase of the trial in the instant case. Yet,
because of the virtually unlimited scope of admissible punishment phase evidence under
art. 37.07, section 3(a), the notice of intent provision of section 3(g) takes on a
compellingly prophylactic nature. Rule 404(b) has been referred to as the "propensity
rule," see Mayes v. State, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991), because it provides
that evidence of other crimes, wrong, or acts is not admissible to prove the character of
a person in order to show the person acted in conformity therewith during the
guilt/innocence phase. Article 37.07, section 3(a), however, permits "other crimes,
wrongs, or acts" evidence explicitly to show "propensity" as "propensity," among other
things, has been determined by the Legislature as set forth in art. 37.07 to be relevant to
sentencing. That being the case, a defendant is at least entitled, we believe, to be informed
as to what the State intends to introduce into evidence for the punishment factfinder's
consideration so as to be able to counter such evidence in whatever manner he considers
most beneficial. We hold, therefore, that because of the virtually unlimited scope of "bad
act" evidence admissible against a defendant at the punishment phase of a trial, there is no
"same transaction" exception to the notice of intent requirement under art. 37.07, section
3(g). 

 In the instant case, the trial court erred in permitting the State to introduce any of
the photographic evidence, with the exception of the "video" evidence depicting the
offense alleged in Cause No. 9137JD, and erred in permitting the State to introduce any
evidence referring to or describing his pending federal charge. We must now conduct a
"harm" analysis. See Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

 In Johnson v. State, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001), the Court held that
it is the responsibility of the appellate court to assess harm after reviewing the record and
that the burden to demonstrate whether the appellant was harmed by a trial court error does
not rest on the appellant or the State. In the instant case, the appropriate standard of harm
is to disregard the error unless a substantial right has been affected. Tex. R. App. P.
44.2(b). A substantial right is affected when the error has a substantial and injurious effect
or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997). The following language taken from Kotteakos v. United States, 328
U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), has been adopted by reviewing courts in
Texas as authoritative when conducting a substantial rights review under Rule 44.2(b):

 If, when all is said and done, the conviction is sure that the error did not
influence the jury, or had but very slight effect, the verdict and the judgment
should stand, except perhaps where the departure is from a constitutional
norm or a specific command of Congress. But if one cannot say, with fair
assurance, after pondering all that happened without stripping the erroneous
action from the whole, that the judgment was not substantially swayed by the
error, it is impossible to conclude that substantial rights were not affected. 
The inquiry cannot be merely whether there was enough to support the
result, apart from the phase affected by the error. It is rather, even so,
whether the error itself had substantial influence. If so, or if one is left in
grave doubt, the conviction cannot stand. 


Id. at 764-65, 90 L.Ed. at 1566-67 (citation and footnote omitted). See also Johnson v.
State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); Morales v. State, 32 S.W.3d 862, 867
(Tex. Crim. App. 2000); Jackson v. State, 17 S.W.3d 664, 672 (Tex. Crim. App. 2000);
Dorsey v. State, 24 S.W.3d 921, 930 (Tex. App.--Beaumont 2000, no pet.).

 In a very recent opinion, the Court of Criminal Appeals re-emphasized the necessity
for a reviewing court to examine "the record as a whole" when conducting a harm analysis
under Rule 44.2(b). See Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). 
As the Court noted, the reviewing court is to consider testimony, physical evidence, the
nature of the evidence supporting the verdict, the character of the error and its relationship
to other evidence, the trial court's instructions to the jury, the theories of the respective
cases for the State and the defense, arguments to the jury, and relevant portions of the voir
dire. Id. at 444-45. 

 We begin a "substantial rights" harm-review by determining the nature of the
"right" that was at risk of being affected. For instructive purposes, we consider the recent
case out of the Court of Criminal Appeals, Hayden v. State, supra. (5) Although Hayden was
a case involving Rule 404(b) notice of intent, it is nevertheless enlightening. The issue in
Hayden was whether the State's delivery to defense counsel of witness statements
containing extraneous offenses would be sufficient notice of the State's intent to
subsequently introduce said extraneous offenses under Rule 404(b). Hayden, No. 610-00,
2001 WL 1414287, at *2. Significantly, for our purposes, the Court engaged in the
following analysis:

 Because the purpose of Rule 404(b) notice is to prevent surprise, we
agree with the cases indicating that delivery to the defense of witness
statements detailing extraneous offenses may, in an appropriate case, satisfy
the notice requirements of Rule 404(b). The rule requires "reasonable"
notice. Whether the delivery of witness statements constitutes reasonable
notice depends in part on the timing of that delivery. If the State gave the
statements to the defense shortly after receiving the request for notice, the
implicit statement is: "These are the extraneous offenses that we intend to
offer in the case-in-chief." The longer the time lapse between the receipt of
the notice and the delivery of the witness statements, the less likely that the
recipient will conclude, "This is the evidence that responds to my request." 
Because a reasonable conclusion to be drawn when delivery of witness
statements follows upon the heels of a timely request for notice, is that the
State intends to use the evidence, "reasonable" notice is implicit in the
delivery. . . . The prosecution is not required to make a written response
concerning its intent, although this is certainly the recommended procedure. 
Although the better practice is for the prosecutor to state explicitly the intent
to introduce extraneous offense evidence, the trial court did not abuse its
discretion in concluding that delivery of witness statements to the defense in
this particular case provided appellant with reasonable notice. 


Id. at *3 (footnotes omitted). The majority in Hayden agreed with the portion of Judge
Meyers' dissent that the "spirit" of Rule 404(b) is to allow a defendant adequately to
prepare to defend against the extraneous offense evidence, and that the Rules should not
be interpreted to encourage "trial by ambush." Id. at *3 n.16. 

 Under the Court's analysis, a very prompt delivery by the State of some document
that contains extraneous offenses, following a timely request for notice by a defendant,
permits defense counsel to reasonably conclude that the State intends to introduce evidence
of the extraneous offenses contained in said document. Recall the timing of the sequence
of events in the instant case: March 27, 2001 - - indictments filed; May 4, 2001 - -
appellant's written request to State for notice under art. 37.07, section 3; May 17, 2001 -
- pre-trial hearing at which State joined appellant's request for notice, with trial court
granting accompanying motion; May 18, 2001 - - State's written notice of intent generated
and sent to appellant; May 29, 2001 - - State apparently informs appellant of its intent to
introduce photographs and extraneous federal charge.

 In considering the Hayden Court's emphasis on the importance of the timing of the
State's notice of intent vis-a-vis the defendant's request for notice, the glaring question that
is raised in the instant case is whether trial counsel, having been presented with the written
State's notice of intent very shortly after the pre-trial hearing in which the State virtually
insisted that the trial court grant appellant's request, could not have reasonably concluded
that the State's written notice contained ALL of the extraneous offense evidence the State
planned to introduce at the trial? If trial counsel could have reasonably concluded the
State's quickly drafted and delivered written notice of intent contained ALL of the State's
extraneous offense evidence it intended to introduce at trial, was trial counsel and appellant
"ambushed" on the day of trial when informed of the State's intent to introduce the
photographs and extraneous federal charge evidence? 

 Clearly, then, the nature of the right potentially affected was appellant's right to be
informed of what extraneous offense or bad act evidence the State intended to introduce
so as to be able to prepare a punishment case-in-chief that would counter or mitigate said
extraneous offense or bad act evidence. Having said this, we now examine the entire
record as mandated under Schutz. Recall that appellant pleaded guilty to the instant
offense and elected for a jury to assess punishment. As such, our record consists of a brief
voir dire proceeding and a sentencing proceeding. The record also includes a volume of
the reporter's record from pre-trial hearings, and an exhibit volume. 

 An examination of the voir dire proceeding reveals no mention of the erroneously
admitted photographs or the pending federal charge. The State presented six witnesses in
its case-in-chief on punishment. Appellant presented two witnesses in his case-in-chief. 
There were no rebuttal witnesses or evidence. Although very brief, the State's opening
statement to the jury warned of "photographs and things" that would be "hard to handle."
The State also mentions the "computer" and "internet" aspect of its case, and then begins
to describe what the photographs depict in greater detail, including the observation:
"Couple of photographs of this little girl and what they call bondage, tied up, and - - it's
pretty bad stuff." 

 Of the State's six witnesses, two were agents of the Federal Bureau of Investigation
(F.B.I.). One witness, Joe Sterling, was an investigator with the Jasper County Sheriff's
Office. The State's remaining witnesses consisted of appellant's sister-in-law, who
testified that appellant had sexually assaulted her in June of 1998, when she was 12-years-old while her sister, appellant's wife, was away on a trip; appellant's wife, who testified
that she felt that the victim had been "traumatized" by the sexual assault committed by
appellant; and a long-time acquaintance of appellant whose young daughters appellant
admitted to having had sexual contact with on various occasions over the years. As the
State's notice did include the names and incidents involving these children, said extraneous
offense testimony was admissible. 

 The record indicates that the testimony of the two F.B.I. agents was extensive and
detailed with regard to the existence, discovery, and recovery of the photographs contained
in State's Exhibit 2, and included further testimony detailing the recovery of a number of
other photographs of nude children recovered from appellant's computer, and a general
description of the activities of internet traders of child pornography worldwide. 
Appellant's witnesses consisted of his mother and his grandmother, both of whom testified
as to their surprise that appellant could have engaged in the acts he admitted to having
committed. Appellant rested his case following this brief bit of testimony. 

 The State chose to provide initial and final closing remarks to the jury with
appellant's final remarks sandwiched in-between. Although the entirety of the State's
initial and closing remarks was very brief, taking up only a little over two pages of the
reporter's record, both prosecutors strongly emphasized the photographs contained in
State's Exhibit 2 and what said photographs depicted. The following was taken from the
State's initial remarks: 

 Now, you wonder what the punishment is for someone that does this
kind of thing, and you all have to decide within yourself. You're looking at
a term in the penitentiary from 5 to 99 years, or life. I'm not going to sit
here, you've seen the evidence and you have the right to get any of these
pictures back there or anything else and look at it again, and I'm not going
to take much of your time because those pictures speak more than I can say. 


The following was taken from the State's final remarks to the jury: 

 There - - these pictures y'all never did look at them up close. They're
a little bit hard. There's one in there, it's 13, that one breaks my heart every
time I look at it. I can't quite imagine the mind-set of a man that binds his
daughter up and ties her up and takes that picture and - - and then publishes
it on the internet. . . . 


 There are two verdict forms. One of them is a range of years
between 5 and 99. The second verdict form is a sentence of life
imprisonment. Now, when I look at that picture and when I think of that
video that I sat here and watched with y'all and have watched before, I don't
think there is any reasonable judgment to be made except to take the
maximum opportunity that we have to prevent another victim; and I - - I
recommend to you the life sentence, . . . 


 Were we to conclude our examination of the record at this point, we would have
difficulty in having a fair assurance that the error did not influence the jury, or influenced
the jury only slightly. See Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). 
Indeed, a recent case out of the Fifth Circuit reversed a defendant's conviction for
possession of child pornography because the State insisted upon introducing before the
jury, over a timely Rule 404(b) objection, (6) written narratives depicting violent rape and
torture to children. See U.S. v. Grimes, 244 F.3d 375, 385 (5th Cir. 2001). The Court
concluded its analysis with the following:

 Having read the narratives, we cannot agree with the district court's
decision and are unpersuaded by the government's argument. The narratives
are vile in their graphic and violent nature: young girls in chains, a young
girl in handcuffs, and references to blood, for example. Perhaps on retrial
the government can redact a different portion of the narratives and attempt
to reintroduce them. Should it attempt to do so, it should be wary of
introducing gruesome violence, in light of the fact that the charged pictures
are non-violent in nature. 


Id. We could make a similar observation with regard to the actual charged offense (sexual
assault by vaginal penetration of appellant's penis) vis-a-vis the depictions of graphic
bondage and other violence in certain of the photographs included in State's Exhibit 2. 

 Nevertheless, the record before us does include admissible punishment evidence that
basically portrays appellant as a sexual predator of very young, female children. State's
Exhibit 8, appellant's own statement, admitted without objection, included described sexual
incidents involving the victim, as well as a written description of what each of the thirteen
photographs contained in State's Exhibit 2 depicted. Said statement also contained
admissions of sexual contact of various types upon different female children ages 3-years-old, 5 to 7-years-old, and 4-years-old. Some of these previous incidents of sexual contact
occurred approximately fourteen years prior to the day of the statement. 

 Also included as admissible punishment evidence was the "video" apparently
depicting appellant performing oral sex on the victim. As we noted at the outset of this
opinion, this "video" was described by the State as representing the offense charged in
Cause No. 3137JD, the aggravated sexual assault dismissed by the State upon appellant's
guilty plea. 

 While the cases Johnson, King, and Kotteakos, supra, contain explicit standards by
which reviewing courts are to measure harm stemming from non-constitutional error, we
find useful the following language contained in O'Neal v. McAninch, 513 U.S. 432, 115
S.Ct. 992, 130 L.Ed.2d 947 (1995): 

 But, we consider here the legal rule that governs the special
circumstance in which record review leaves the conscientious judge in grave
doubt about the likely effect of an error on the jury's verdict. (By "grave
doubt" we mean that, in the judge's mind, the matter is so evenly balanced
that he feels himself in virtual equipoise as to the harmlessness of the error.) 
We conclude that the uncertain judge should treat the error, not as if it were
harmless, but as if it affected the verdict (i.e., as if it had a "substantial and
injurious effect or influence in determining the jury's verdict.)


Id. at p. 435; 130 L.Ed.2d at 951. In the instant case, under the particular procedural
circumstances of a defendant who pleaded guilty to the jury, our examination of the entire
record before us simply does not leave us with grave doubt about whether the error,
although exacerbated by the various actions of the State, had a substantial and injurious
effect on the jury's decision as to the proper punishment to assess. As the jury assessed
the maximum punishment available for the offense charged, the unmistakable message the
jury was sending to appellant was that he was not going to be permitted to prey on young
children for his sexual desires ever again. There was certainly an abundance of properly
admitted punishment evidence in support of such a verdict - - and message. Furthermore,
although appellant was given reasonable notice of the other properly admitted extraneous
offense evidence involving sexual contact with other young girls, his case-in-chief made
no real attempt to counteract or mitigate the damaging effects of such evidence. Appellant
does not suggest what, if anything, he or his trial counsel would have done differently had
the State's notice letter included the fact that the State intended to introduce the
photographs in question and the pending federal offense. 

 We conclude that what doubt there is of the error's effect on the jury's punishment
decision, it does not rise to "grave doubt" so as to permit us to vacate the punishment
assessed. We therefore overrule appellant's first issue. The result of our harm analysis
conducted under issue one precludes the need to conduct an analysis of the evidence in
question under Rule 403. This is so because even were we to say that the evidence in
question was substantially more prejudicial than probative, we would conduct an identical
harm analysis under Rule 44.2(b). See Reese v. State, 33 S.W.3d 238, 243 (Tex. Crim.
App. 2000). We therefore overrule appellate issue two and affirm the judgment and the
sentence of the trial court. 

 AFFIRMED.


 ______________________________

 RONALD L. WALKER

 Chief Justice


Submitted on November 28, 2001

Opinion Delivered April 17, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.



CONCURRING AND DISSENTING OPINION


 I concur with the majority when they hold "the trial court erred in permitting the
State to introduce any of the photographic evidence, with the exception of the 'video'
evidence depicting the offense alleged in Cause No. 9137JD, and erred in permitting the
State to introduce any evidence referring to or describing his pending federal charge." 
Unfortunately, I respectfully dissent to the majority's conclusion that the error was
harmless. (7) The majority opines there "was certainly an abundance of properly admitted
punishment evidence in support of such a verdict" [the maximum], yet we will never know
because the properly admitted punishment evidence was intertwined with the erroneous
admitted evidence. Unfortunately, under the appropriate standard of review, there must
be some type of qualitative analysis of the evidence. As noted by the majority, the proper
evidence consisted of testimony by other victims, Waltmon's written statement where he
described the photographs in State's exhibit two and admitted committing various unlawful
sexual acts with children plus a video of Waltmon performing oral sex on the victim.

 While Waltmon's written statement is repulsive, the photographs are not only
repulsive but revolting. A comparison (8) of the statements and photographs are at Appendix
One. (9)

 This case, in my view, epitomizes the old saying "A picture is worth a
thousand words." (10) It is one thing to listen to or read Waltmon's words and yet another
to see the photographs. Courts have long recognized that pictures are powerful,
demonstrative evidence. (11) Just recently the Court of Criminal Appeals held the erroneous
admission of a photograph of the murder victim and her unborn child lying in a casket was
not harmless in the penalty phase of a capital murder prosecution. Reese v. State, 33
S.W.3d 238, 239 (Tex. Crim. App. 2000) 

 The majority adopts the "grave doubt" standard of O'Neal v. McAninch, 513 U.S.
432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), yet seems to focus on the common (12)
definition of the word "grave" rather than the definition supplied by the Supreme Court. (13) 
Looking at all the record before us, I can have no fair assurance that the error did not
influence the jury, or had but a slight effect. (14) Reese, 33 S.W.3d at 244. At the very
least, the question of whether the photographic evidence influenced the jury is evenly
balanced, therefore within the "grave doubt" range. Consequently, I would reverse and
remand for a new punishment hearing.



 DON BURGESS

 Justice


Dissent Delivered

April 17, 2002

Publish 


Appendix One

Do Not Publish


 Appendix One



 Statement Photograph


Photo #3 depicts my daughter . . . naked with The penis appears to be

my penis resting on her genitals . . . . erect and touching her genitals


Photo #5 depicts my daughter lying on belly The penis appears to be erect and

half naked . . . with my penis touching her inserted between the buttocks

genitals . . ..


Photo #7 depicts my daughter half naked . . . and The penis appears to be erect and

my genitals are pressed up to her genitals . . . partially inserted into the vaginal
area. The penis and vaginal area
appear "reddened"


Photo #11 depicts my daughter . . . half naked. The penis appears to be erect and

. . . [M]y genitals pressed up to her genitals. partially inserted into the vaginal

 area ( more so than photo 7)


Photo #12 depicts my daughter . . . naked with The child appears to be bound

some dark colored rope making it appear is (sic) with rope and his forefinger

she is in bondage. My finger is bend at her appears to be inserted into her 

genitals and made to look like it would be inside vagina.

her.


Photo #13 depicts my daughter lying on the ground The child is naked with her arms

with some rope laid around her. Her arms pulled above her head and appears to be

above the head. A sharpie marker is lying below bound with rope. The child's face

her genitals to make it appear that it was inside appears red and distressed. The 

her. A bandana is around her face. sharpie marker appears to be
inserted into her vagina.



Do Not Publish
1. We accept as true factual assertions made by counsel at trial which could have
been, but were not, disputed by opposing counsel. See Pitts v. State, 916 S.W.2d 507,
510 (Tex. Crim. App. 1996).
2. Except for Cole, the State's brief does not indicate the subsequent histories of the
other three cases just mentioned. 
3. The viability of that reversal is in question as the Court of Criminal Appeals
granted rehearing on petition for discretionary review on February 6, 2002. As our
reliance on Hayden is merely for instructive purposes, see harm analysis, infra, we believe
the reasoning in our harm analysis is based upon the particular facts and circumstances in
the instant case so that any revision of Hayden, no matter how drastic, will not affect our
ultimate decision.
4. While the defendant in Hayden apparently sent both Rule 404(b) and art. 37.07,
section 3(g) notice requests to the State, the Sixth Court of Appeals decided the issue
exclusively on Rule 404(b) grounds, with a cursory observation in a footnote that "[t]he
requirements for notice of intent to introduce extraneous offenses are the same according
to Article 37.07, § 3(g) as they are with regard to Tex. R. Evid. 404(b)." See Hayden,
13 S.W.3d at 74 n. 5. In its opinion reversing the Sixth Court, the Court of Criminal
Appeals explicitly avoided the issue of whether or not the extraneous offenses in question
arose in the same transaction. See Hayden, No. 610-00, slip op. at 2, 2001 WL 1414287,
at *1 n. 1 (Tex. Crim. App. Nov. 14, 2001). 
5. See our footnote 4, in this opinion, supra.
6. Under Fifth Circuit law, a review for abuse of discretion the admission of evidence
pursuant to Rule 404(b) involves a two-pronged inquiry which essentially encompasses a
Rule 401 (relevancy) inquiry, and a Rule 403 (probative v. prejudicial) inquiry. See U.S.
v. Grimes, 244 F.3d at 383-84.
7. My dissent is reluctant, but necessary; reluctant because appellant is a confessed
pedophile who abused and exploited his infant daughter, but necessary because even
atrocious acts must be proved by properly admitted evidence.
8. I readily admit this is a highly subjective exercise, yet my descriptions of the
photographs do not convey the images.
9. Because of explicit, but necessary language, Appendix One is ordered "Do Not
Publish."
10. Fred R. Barnard, Printers' Ink, Mar. 10, 1927, at 114 (Source: The Home Book
of Proverbs, Maxims and Familiar Phrases, Burton Stevenson, ed., 1948)
11. For an example of how one photograph can have an influential effect see Langford
v. Blackman, 790 S.W.2d 127, 132 (Tex. App.--Beaumont), rev'd, 795 S.W.2d 742 (Tex.
1990)(emphasis added).
12. "Of importance; authoritative; weighty; sedate; serious." Webster's Third New
International Dictionary 992 (3d ed. 1981).
13. "By 'grave doubt' we mean that, in the judge's mind the matter is so evenly
balanced that he feels himself in virtual equipoise as to the harmlessness of the error." 
O'Neal, 513 U.S. at 435; 130 L.Ed.2d at 951.
14. As noted by the majority, the State alluded to the photographs in closing
arguments.